\*KANE and wife, *appellants*, and GOTT and others, *respondents*. [ \*641 ]

Where a will was made directing real estate to be sold, the proceeds to be invested, and the income to be applied to the support of two nieces until they arrived to the age of twenty or married, and then the income to be paid to them in equal proportions during their respective lives; on the death of one without issue, *the whole income* to be paid to the survivor; on the death of both leaving issue, *the whole trust fund* to go to such issue: one moiety to the children of each, and on the death of the nieces without issue, the property to go to the mother of the testator; IT WAS HELD, that the nieces took immediate vested interests in their respective moieties of the *income* of the estate during their lives, with a remainder to the survivor for life in the moiety of the other dying without issue; and that on the death of both leaving issue, the fund went to their children.

*Real estate* directed by will to be sold, and the avails to be applied to the uses created by it, is *in equity* regarded as *personal property;* and the doctrine of *uses* and *trusts* and *limitations of real estate* has *no application* in such cases farther than is *expressly declared* by statute.

The statute in regard to *estates in personal property* treats *only of accumulations* of interest or income and of *expectant estates.* The mode of directing *accumulations*, so as to be valid, the statute specially points out. The suspension of absolute ownership is limited to two lives; and in all other respects, *limitations of future* or *contingent estates* are the same as if the subject were *real estate.*

Whether the *income* in the hands of the nieces is *inalienable,* and what is the effect of a decree declaring it so, *quere.*

A *will* may be *void* in part and yet good for the residue, and such portions of it as are not contrary to law will be saved; although *it seems* this conservative rule in the construction of wills has not always been observed.\*

APPEAL from chancery. *William Cook* died seized of a considerable real estate, and possessed of personal property consisting of bonds and mortgages, and other securities, of the value of about $120,000. In November, 1833, he made his last will and testament: by the *third* clause of which he gave, devised and bequeathed unto one John Gott and two other persons, whom he subsequently constituted executors of his will, all his estate, both real and personal, *upon trust*, to sell his real estate, (except certain specified portions,) and to invest the proceeds (not required to carry into effect any of the provisions of the will,) in public stocks, or in bonds [ \*642 ] and mortgages, and in like manner to invest and re-invest any other moneys which should come to their hands, so as to make the whole of his estate active, and yielding an income. By the *fourth* and *fifth* clauses of the will, he gave to *Jennet Cook*, the widow of a deceased brother, the use of a dwelling house and furniture, and an annuity of $2000 during her life or widowhood,

\* Decided December 26, 1840.

for the support of herself and family.  By the *sixth* clause, he gave an annuity of $600 to his mother, *Candace Cook*.  By the *seventh* clause, in case of the death of his sister-in-law, or her re-marriage before his nieces *Sarah* and *Jennet* should have attained the age of twenty or be married, he directed that they should have the use and occupation of the dwelling house and furniture, and should be supported and educated by the executors, and each have an annual allowance of $1000.  By the *eighth* clause, he gave to his nieces respectively, after they arrived to the age of twenty or were married, each an equal half of the income of his estate, after payment of the annuities to his mother and sister-in-law.  By the *ninth* clause, in case of the death of either of the nieces after having attained to the age of twenty without issue, he gave to the *survivor* of them the *whole clear income* of his estate, and in case of the death of either leaving issue, he gave to such issue the moiety of the income of the estate, directing his executors to apply so much thereof as should be necessary to the support and education of such issue until the child or children should arrive at the age of 21 years, if male, and 20, if female ; and if the niece dying should leave a husband, authorizing the executors to appropriate a portion of such moiety of the income towards his support, and to vest at interest the surplus.  Upon the issue attaining the ages before mentioned to pay to the child or children, as they respectively became of age, a full share of the balance in their hands unexpended of the one half of the income of the estate, with any increase or accumulation thereof during the minority of such child or children respectively ; and to continue at interest any portion of the one-half of the income [ *643 ]   *of the estate until such child or the youngest of such children should come of age, and to pay the same with the increase thereof to such child, and if there should be more than one, to such children, in equal proportions.  By the *tenth* clause, in case of the death of both nieces leaving lawful issue, he gave to the children of each one equal half of *all his estate*, both real and personal.  By the *eleventh* clause, in case of the death of both nieces, and only one of them leaving issue, he gave the whole estate to such issue ; and if such issue should be under age, he directed the executors to apply so much of the estate as might be necessary for their support and education, and until the youngest should become of age, to pay to such as should become of age during the minority of the youngest, an equal share of the income, and then to assign and transfer unto such issue all the money then on hand, and all the stocks and securities held, and to release to such issue any real estate to which they might have acquired title in the management of the estate ; and by the *twelfth* clause of the will, the ultimate remainder in fee was limited to the mother of the testator in case both nieces died without issue in her lifetime.  In July, 1834, the testator died, and in February, 1837, his executors and trustees filed a bill in chancery against his heirs and next of kin and the legatees named in the will, for the

purpose of settling the construction of it, and to have the trusts thereof, if valid, carried into effect. At the death of the testator, his mother, *Candace Cook*, his sister-in-law, *Jennet Cook*, and his nieces *Sarah* and *Jennet* were living. *Sarah* became the wife of *John I. Kane* and the mother of two children. Candace Cook died previous to the filing of the bill by the executors. Kane and wife filed a cross-bill against the trustees, and against the mother, sister and children of Mrs. Kane, and against the representatives of the testator's mother, asking for a decree declaring *void* certain trusts and provisions in the will, and for a distribution of the estate (not legally disposed of) among the heirs and next of kin of the testator. The bill was taken as confessed against the mother of Mrs. Kane, and against the personal representative of the testator's mother. The case was *heard by the chancellor upon both bills, and the answer of the [ *644 ] several parties, and upon a master's report as to the facts of the case.

In May, 1839, the chancellor made the following decree: (for the reasons of which, see 7 *Paige*, 521, *et seq.*)

" *First*—It is declared and decreed, that the said executors as trustees took no estate or interest whatever in the house and lot, situate on the west side of Pearl street in the city of Albany, by virtue of the will of the said William Cook, deceased, in the pleadings in this cause mentioned ; but that the whole beneficial interests devised, so far as the devise of an estate or interests in the house and lot was legal, passed directly to the persons for whose benefit the same were intended as legal estates.

" *Secondly*—It is declared and decreed, that the direction in the will of the testator to his executors and trustees to convert all his estate, except the said house and lot on the west side of Pearl street, and the farm in Middlefield, into money, and to invest the same as personal estate for the purposes of the will, is valid as a power in trust, so far as the purposes of the said conversion are legal, as hereafter declared; and such real estate is in equity to be considered as converted into personalty from the death of the testator, for all the purposes of the will, which are valid as to the personal estate.

" *Thirdly*—It is declared and decreed that the annuities given by the testator to his mother, and to his sister-in-law Jennet Cook, are valid, and are a charge upon the capital as well as upon the income of the personal estate, and the proceeds of the sale of the real estate. The executors and trustees are therefore directed to pay the last mentioned annuity in quarterly payments, either out of the income of such personal estate and of the proceeds of the real estate, or in their discretion, out of the capital of those funds, to purchase an annuity for the term of her natural life, of The New York Life Insurance and Trust Company, payable quarterly, or a similar annuity to be secured by bond and mortgage, on unincumbered real estate of double the

present value of such annuity, exclusive of buildings, and pay such annuity to her quarterly, during her life or until she remarries.

[ *645 ] *" *Fourthly*—It is declared and decreed, that the provision in the will for the support of the testator's nieces, after the death or remarriage of their mother, and while they are under twenty years of age and unmarried, is valid. And in case the contingency contemplated by the testator should happen during such minority of the infant defendant, Jennet M. Cook, and before her marriage, the executors and trustees are directed to provide for her accordingly.

" *Fifthly*—It is declared and decreed, that the true construction of the third and eighth clauses of the will is that the executors and trustees shall accumulate the income of the personal estate, and of the proceeds of the sale of the real estate which are not wanted for other purposes of the will, for the sole and exclusive benefit of the two infant nieces of the testator, one half for the exclusive benefit of each, and to be paid over to them or their personal representatives absolutely, when they shall respectively have arrived at the age of twenty years, or when they shall have married before that time ; and that such accumulations are authorized by law and are valid. The executors and trustees are therefore directed to pay over to Sarah C. Kane her share of such accumulated income which became payable to her upon her marriage, or such part thereof as has not already been paid, and that they continue to accumulate the other half of the income as directed by the testator for the use of the defendant, Jennet M. Cook, and pay the same over to her or her personal representative, when she shall arrive at the age of twenty or be married, or upon her death, if she should happen to die under that age.

" *Sixthly*—It is declared and decreed, that the bequest to each niece of one half of the income of the personal estate, and of the proceeds of the sale of the real estate, after payment of the annuities, from and after she arrives at the age of twenty or is married, for and during her natural life, is a valid bequest; but that it is a limitation of a future interest in personal estate and in the proceeds of real estate, and her interest in the income of each is inalienable during her life, by the provisions of the revised statutes.

The executors and trustees are therefore directed to pay to Sa-
[ *646 ] rah C. Kane *the income of her half of the fund upon her separate receipt, or apply the same to her use, free from the control of her husband, from time to time, as the said income shall be received, but they are not to pay the same to her in anticipation of .the receipt of the same, or to any person to whom she may attempt to assign it, before it is received by such executors and trustees. And they are also directed to pay over to Jennet M. Cook the income of her half of the fund, in the same manner, which shall accrue after she arrives at the age of twenty, or is married, or apply the same to her use.

"*Seventhly*—It is declared and decreed, that the bequest of the income of the niece who shall die without issue in the lifetime of the other, to the survivor for life, is also valid, but is subject to the same restriction upon the power of alienation. The executors and trustees are therefore directed upon the happening of that contingency, to pay over the income to the survivor, or to apply to her use, in the manner which is before directed.

"*Eighthly*—It is declared and decreed, that the provision in the ninth clause of the will, giving to the children of the niece who dies first having issue, and to the husband of such niece, future contingent interests in the income of her share of the estate during the life of the survivor, and directing an accumulation during the minority of the youngest of her children, is illegal and void. The executors and trustees are therefore directed, upon the happening of that contingency to pay the income of that share during the life of the surviving niece, to such persons or their legal representatives, as would be entitled to the personal estate of the testator in case he had died intestate. So far as that income arises from the personal estate of which the testator died possessed, and so far as it arises from the proceeds of the sale of real estate, they are to pay it during the same time to the heirs at law of the testator or their personal representatives, as a contingent interest in the real estate not disposed of by the will.

"*Ninthly*—It is declared and decreed, that the provision in the tenth clause of the will giving one half of the capital *of the    [ *647 ] fund to the children of each niece in fee, after the death of both nieces leaving issue is valid. And upon the happening of that contingency, the executors and trustees are directed to pay over the fund to the said children or their personal representatives accordingly.

"*Tenthly*—It is further declared and decreed, that the provision in the eleventh clause of the will as to the disposition of the income of the estate after the death of both nieces, in case only one of them leaves issue, and as to the limitation of the absolute ownership after the minority of the youngest child shall have terminated, is illegal and void. And upon the happening of that contingency as contemplated by the testator in that clause of his will, or upon the death of both the nieces without leaving lawful issue, after the death of the testator's mother, the executors and trustees are directed to pay over so much of the fund, and of the income thereof, as has arisen from the sale of the real estate of the testator, to his heirs at law or their legal representatives, and the residue of the fund to his next of kin or their personal representatives, as directed by law in cases of intestacy. To enable the executors and trustees to comply with these directions, they are to keep separate accounts of the fund arising from the personal estate, and of the fund arising from the sale of the real estate ; and in keeping such accounts, the personal estate is to be considered as the primary fund for the payment

of debts, annuities and the expenses of administering the estates, including all costs and expenses which are directed or decreed to be paid out of the fund in the hands of the executors and trustees.

" *Eleventhly*—It is further ordered and decreed, that it be referred to the injunction or taxing master of the third circuit, to take and state the accounts of the executors and trustees for all monies received and expended by them, and of the proceeds of the real estate of the testator sold by them, exclusive of the income ; and that he also ascertain and report what is due to the said Sarah C. Kane on account of her share of the income arising both from real and personal estate accumulated for her benefit pre-
[ *648 ]    vious to the *time of her marriage, and also what is due to her for such income subsequent to her marriage ; and that he also ascertain and report the amount of Jennet M. Cook's share of the income and the accumulation of the same ; and that the said master report in the premises with all convenient speed.

" *Twelfthly*—It is further ordered and decreed, that the said executors and trustees pass their accounts annually thereafter, from the date of that report, before the same *injunction* or taxing master, if he remains in office, or if not, before his successor as such injunction or taxing master, or before such other master as this court may designate for that purpose from time to time, during the continuance of their trust. And that upon the passing of the said accounts, the said master summon all proper parties, or their solicitors or guardians, to attend upon the taking thereof. And that upon the filing and confirmation of the report of the master, upon stating the accounts originally, or upon any subsequent passing of the accounts, if no exceptions have been filed, or if the exceptions have been disposed of by the court, the executors and trustees, or any other party to this suit, may, upon due notice to the other parties interested, or to their solicitors or guardians, apply to the court on any regular motion day, either in term or vacation, for a special confirmation of the master's report, or for such other or further directions in relation to the trust of the executors and trustees aforesaid, as may be just, and as shall from time to time be deemed necessary ; and that the costs and expenses of the annual passing of such accounts be paid out of the annual income of the fund for the year immediately previous to the time of passing the accounts.

" *Lastly*—It is ordered and decreed, that the costs of all the parties in these suits be paid by the executors and trustees out of the capital of the personal estate in their hands ; and that they also pay to the counsel and guardian ad litem of the infant defendant Jennet M. Cook, a reasonable counsel fee, upon the argument of this cause, to be certified by the said master, out of the accumulated income in their hands belonging to her."

[ *649 ]     Kane and wife separately *appealed* from the 2d, 4th, 5th, *6th,

7th, 9th, 11th, and 12th sections of the decree, and from the following *part* of the 8th section, viz :

" The executors and trustees are therefore directed, upon the happening of that contingency, to pay the income of that share during the life of the surviving niece, to such persons or their legal representatives as would be entitled to the personal estate of the testator in case he had died intestate. So far as that income arises from the personal estate of which the testator died possessed, and so far as it arises from the proceeds of the sale of real estate, they are to pay it during the same time to the heirs at law of the testator or their personal representatives, as a contingent interest in the real estate not disposed of by the will."

And also from all that *part* of the *tenth* section of the decree which is in the following words :

" And upon the happening of that contingency as contemplated by the testator in that clause of his will, or upon the death of both the nieces without leaving lawful issue, after the death of the testator's mother, the executors and trustees are directed to pay over so much of the fund, and of the income thereof, as has arisen from the sale of the real estate of the testator to his heirs at law or their legal representatives, and the residue of the fund to his next of kin or their personal representatives, as directed by law in cases of intestacy. To enable the executors and trustees to comply with these directions, they are to keep separate accounts of the fund arising from the personal estate, and of the fund arising from the sale of the real estate ; and in keeping such accounts, the personal estate is to be considered as the primary fund for the payment of debts, annuities and the expenses of administering the estate, including all costs and expenses which are directed or decreed to be paid out of the fund in the hands of the executors and trustees."

The case was argued in this court by

*James King*, for the appellant, Mrs. Kane.

*S. A. Foot*, for the appellant, Mr. Kane.

*\*M. T. Reynolds & S. Stevens*, for the respondents. [ \*650 ]

*Points made and argued on the part of Mrs. Kane :*

I. The provisions of the revised statutes are violated by the directions in the will, suspending the absolute power of alienation for more than two lives in being.

1. The absolute power of alienation is suspended for more than two lives in being, in the devise of the Pearl street house and lot. The testator, by

the third section of the will, gives, devises and bequeaths his whole estate, both real and personal, to his executors in trust, and then, by the fourth section of the will, gives and bequeaths a contingent life estate to Mrs. Jennet Cook, in the house and lot in Pearl street, and afterwards a life estate to his two nieces during their joint lives. 1 *R. S.* 723, § 14, 15. *Dashwood* v. *Peyton,* 18 *Ves.* 40. *Upton* v. *Ferrers,* 5 *id.* 806.

2. The absolute power of alienation is suspended for more than two lives in being in the whole estate, by giving, in the seventh and eighth sections of the will, a life estate in the income to the testator's two nieces, and then, by the ninth, tenth and eleventh sections, farther suspending the power of disposition during the several minorities of the children of his two nieces, who were not in being at the time of the death of the testator, when the estate was created. 1 *R. S.* 730, § 63, 65 *and* 67. *Id.* 723, § 14, 15 *and* 16. *Revisers' Notes, p.* 23, *on creation and division of estates. Coster* v. *Lorillard,* 14 *Wendell, C. J. Savage's opinion, pages* 299, 305, 309 ; *J. Nelson's opinion,* 334, 335 ; *Senator Maison's opinion,* 359, 355. 1 *R. S.* 729, § 60. *Hawley* v. *James,* 16 *Wendell, C. J. Nelson's opinion,* 126, 120 ; *J. Bronson's opinions,* 163, 164, 169, 171, *&c.* ; *Senator Maison's opinion,* 221, 222, 225, 228. *Coster* v. *Lorillard,* 14 *Wendell* ; *Senator Young's opinion,* 386, *&c.* 4 *Kent's Comm.* 283, 2d *ed.*

3. The court cannot give effect to the estate in remainder upon the death of the testator's two nieces, because the trust estate is farther prolonged by the minority of the youngest child of the two nieces, who was [ *651 ] not named in the *will, nor it in being at the creation of the estate. 1 *R. S.* 724, § 19. *Hawley* v. *James,* 16 *Wendell, C. J. Nelson's opinion,* 120, 126 ; *J. Bronson's opinion,* 171. *Coster* v. *Lorillard,* 14 *Wendell, C. J. Savage's opinion,* 308. 4 *Kent's Comm.* 2d *ed. p.* 283.

4. It apears by the pleadings that William Henry Kane, a son of the testator's niece Sarah, was born on the twenty-sixth day of September, 1835, after the testator's death, and was not and could not be named in the will as one of ·the children during whose minority the trust estate was intended to endure. 1 *R. S.* 723, § 17, 15. *Hawley* v. *James,* 16 *Wendell, J. Bronson's opinion,* 171, 172. *Root* v. *Stuyvesant,* 18 *Wendell, Chancellor's opinion,* 264, 265.

5. The will does not specify any two certain lives during which the power of alienation was to be suspended ; but it may, by the will, be suspended during the lives of Mrs. Candace Cook, Mrs. Jennet Cook and her daughters, and the minorities of their unborn children. *Hawley* v. *James,* 16 *Wendell, J. Bronson's opinion,* 172 ; *Senator Maison's opinion,* 222 ; *Senator Mack's opinion,* 208 ; *C. J. Nelson's opinion,* 129, 133. *Coster* v. *Lorillard,* 14 *Wendell, C. J. Savage's opinion,* 308.

II. The provisions of the will violate the revised statutes, by creating a trust estate for objects and purposes not authorized.

1. There is no authority for the creation of a trust estate for the sale of real estate, for the purposes declared in the will. 1 *R. S.* 727, § 45. *Id.* 728, § 55. *Hawley* v. *James,* 5 *Paige,* 444.

2. There is no authority for the creation of a trust estate, in which the trustees can only stand seized of the title to the Pearl street house and lot, when the use and occupation is directly given by the testator to Mrs. Jennet Cook, during her life, or while she remains a widow, without any control or discretion of the trustees to be exercised over the same. 1 *R. S.* 727, § 47. *Root* v. *Stuyvesant,* 18 *Wendell, Chancellor's opinion,* 264, 265. 1 *R. S.* 752, § 6.

*3. There is no authority for the creation of a trust estate, for [ *652 ] the mere purpose of authorizing the trustees to receive the income and pay the same over to the testator's nieces. 1 *R. S.* 728, § 55. *Coster* v. *Lorillard,* 14 *Wendell, C. J. Savage's opinion,* 321, 322, 323 ; *Senator Maison's opinion,* 353 ; *Senator Young's opinion,* 382, 383, 384. *Hawley* v. *James,* 16 *Wendell, J. Bronson's opinion,* 156, 157 ; *Senator Mack's opinion,* 213 ; *Senator Maison's opinion,* 266. *Revisers' Notes to* § 55. 2 *Kent's Comm.* 2d ed. 143. *Clancy's Rights of Women, p.* 1, &c. 2 *Blackstone's Comm.* 433, *and note.* 1 *Hilliard's Abr.* 246, § 16.

4. A trust estate to receive the income of an estate, and pay over the same, or apply it to the use of children unborn at the time the trust estate is created, cannot be sustained under the revised statutes. *All the authorities cited under 3d subdivision ; also,* 1 *R. S.* 723, § 17. *Root* v. *Stuyvesant,* 18 *Wendell,* 264, 265. 1 *R. S.* 724, § 20, 24.

5. The purpose of paying an annuity, is not an object within the purview of the revised statutes, that can sustain a trust estate. 1 *R. S.* 728, § 55. *Coster* v. *Lorillard,* 14 *Wendell, C. J. Savage's op.* 329 ; *J. Nelson's op.* 343 ; *Senator Young's op.* 388 ; *Senator Maison's op.* 365, 366, 367, *and Decree. Hawley* v. *James,* 16 *Wendell, J. Bronson's op.* 152, &c.; *Decree.*

6. The mere duty of distributing the estate as directed under the eleventh section of the will, is not a sufficient object to sustain an express trust ; and especially as that service is confined to the sole purpose of distribution, without the exercise of discretion or judgment on the part of the trustees. 1 *R. S.* 728, § 55.

7. The trust estate cannot be sustained under the third subdivision of the 55th section of the second article of title two of the revised statutes, on " Uses and Trusts," because the estate created is not made subject to the rules prescribed in the first article of that title. *All the authorities cited under the several subdivisions of the 1st point.*

III. If the trusts created by the will are not good as express trusts, neither are they good as powers in trust.

1. Although the testator professedly *gives*, *devises* and
[ *653 ]    *bequeaths* all his estate, both real and personal, yet in all the con-
tingencies which he anticipates by a change of parties from death
or otherwise, he *gives* and *bequeaths* or *devises* his estate both real and person-
al, or a share thereof, directly to the person he wishes to become invested
with such share upon the happening of that contingency. He does, not di-
rect his trustees to convey, except in one case, but he *bequeaths* it, or *devises* it
himself. 1 *R. S.* 732, § 73, 74, 78, 79, 128. *Id.* 729, § 58. *Id.* 723, § 14, 15.

2. As powers in trusts are charges upon all the lands of the testator, they
necessarily suspend the power of alienation while they remain unexecuted,
and are, therefore, subject to the same objection on the ground of the sus-
pension of the power of alienation, as the illegal limitation of any other es-
tate. *Same authorities as in last subdivision.*

3. There is not one direction or duty prescribed by the testator in his
will for his trustees to observe or perform, which can be performed under a
power in trust, except the sale of the real estate. 1 *R. S.* 732, § 73, 74,
78, 79; *p.* 729, § 58.

4. To release real estate as the trustees are directed to do in the eleventh
section of the will, can only be done in the execution of a trust: and the
trust in this case cannot be sustained for that purpose while it is held void
for all other purposes.

IV. A trust is an entirety, and if void in part is void altogether. *Haw-
ley* v. *James, Senator Mack's op.*, 213; *Senator Maison's op.*, 250, 251,
252, 16 *Wendell. Coster* v. *Lorillard, J. Nelson's op.*, 348, 349; *Sena-
tor Maison's op.*, 362, 363, 364, 365, 366, 367 ; *Senator Young's op.*,
385, 386, 387, 388, 389, 14 *Wendell.*

V. The directions to accumulate the surplus income of the testator's es-
tate for the unborn child or children of his two nieces, are void, because the
accumulation of the surplus income is not directed to commence within the
time limited by the revised statutes for the vesting of future estates. 1 *R.
S.* 724, § 37. *Hawley* v. *James, Chancellor's op.*, 481, 5 *Paige.*

[ *654 ]    VI. A valid trust in personal property can be created *under
the provisions of the revised statutes by deed or will only for
purposes for which a trust in real estate is authorized, and all other trusts in
personal property are absolutely abolished by the revised statutes. 1 *R. S.*
727, § 45, 55. *Id.* 773, *tit.* 4, § 1, 2. *Revisers' notes on chap.* 1, *part 2,
p.* 41, 42, 43.

VII. After the termination of a valid trust in personal property, the ab-
solute ownership of such property cannot be farther suspended by any con-
dition or limitation whatever. 1 *R. S. p.* 773, *tit.* 4, § 1. *Id.* 724, § 19,
20, 24. *Id.* 728, § 55, *sub.* 3. *Id.* 723, § 17.

VIII. Although a devise of real estate may be decreed to be void as an

express trust, and the directions to convert such estate into personal estate may be sustained, as a valid exercise of a power in trust; yet, when the duties imposed by that power shall have been performed, the real estate thus converted cannot be held under the express trust so decreed to be void. 1 *R. S.* 728, § 55. *Id.* 729, § 58. *Id.* 732, § 77. 1 *Story's Equity, p.* 79, § 61, *and authorities there referred to.*

IX. The decree of the chancellor modifies and alters the will so far that the intentions of the testator are utterly defeated, and great injustice may be done thereby to the parties who are the objects of the testator's bounty; and therefore the whole trust intended to be created should be declared void; and as both the annuitants are dead, a decree should be entered by this court, remitting the cause to the court of chancery, with directions that the executors should settle their accounts before a master in that court; and that the personal property in their possession should be equally distributed between Sarah C. Kane and Jennet M. Cook, who are the next of kin to the testator, and also to declare that all the real estate of which the testator died seized descended to them, his heirs at law, in equal portions, except the Otsego farm, in which Eliza Andrus takes a life estate, and her children an estate in remainder at her death.

*Points made and argued on the part of Mr. Kane:*

I. If the opinion of the chancellor is correct, that the *revis- [ *655 ] ed statutes have not defined the objects for which express trusts of personal property may be created, and that such trusts, therefore, may be created, for any purposes permitted by the common law, still the absolute ownership of personal property cannot be suspended by any limitation or condition whatever for any longer period than the absolute power of alienation of real estate, viz. during the continuance of two lives in being at the death of the testator, if the suspension is by will. 1 *R. S.* 773, § 1; *p.* 723, § 14, 15. And in all other respects, limitations of future or contingent interests in personal property are subject to the statutory rules applicable to real estate. 1 *R. S.* 773, § 2.

II. The general trust of the real and personal property, in this case, was created to pay an annuity to Candace Cook during her life; to pay an annuity to Jennet Cook while she remained unmarried, which by possibility might be during her life; to pay the income of all the testator's real and personal estate, after satisfying the annuities, to his two nieces during their joint lives, in equal shares; and if one died, to pay the whole to the survivor during her life; and if either died leaving issue, to support and educate such issue out of the income, and keep the surplus accumulating till the youngest of such issue became of age. Candace Cook, Jennet Cook, and the two nieces, were in being at the death of the testator. The trust

in this case, therefore, suspended the absolute ownership of the personal property, and the absolute power of alienation of the real estate during four lives in being at the death of the testator, and during the minorities of an unlimited number of unborn children of the two nieces, and whose minorities by possibility might extend beyond each, any two, or all of the four lives in being at the death of the testator. The whole trust is therefore void, and all the devises and bequests dependent upon and connected with it. *Lorillard* v. *Coster*, 14 *Wendell*, 265. *Hawley* v. *James*, 16 *id.* 61. *Root* v. *Stuyvesant*, 18 *id.* 257.

III. The trust of the *real estate* is void for the following additional reasons: 1. It is an express trust, and yet not created for any purpose allowed by the statute. 1 *R. S.* *728, § 55. 2. If it be admitted that the trust of the real estate, so far as regards the authority to sell, is valid as a power in trust, the proceeds are still subject to the trust of the real estate, and must abide the consequence of its being declared void; for the trustees cannot hold them as personal property under a trust which may be valid for such property, because such a principle would in effect repeal the statute restricting trusts of real estate, and render it nugatory, for all real estate could then be conveyed in trust to sell, and the proceeds held on trusts admissible in respect to personal property. 3. The trust of the real estate is to receive rents, profits and income, and *pay them over*, and not to *apply them to the use* of the *cestuis que trust*. The same cases as those cited under the 2d point, and 1 *R. S.* 773, § 2. 4. The trust of the real estate being void as such, and only valid as a power in trust so far as regards the authority to sell, the title to the real estate descended to the two nieces, subject to the naked power of the trustees to sell. 1 *R. S.* § 58, 59; and that power was invalid, because it could not be exercised for the purpose of subjecting the real estate in the form of proceeds, to trusts not allowed in respect to such estate.

IV. If the trust of the real estate is void for all or any of these reasons, the whole trust must fall, and all the devises and bequests dependent on it, as the trust of the real estate is connected and mingled with the whole trust, and forms an integral part of it. *Same cases as those cited under the 2d point.*

V. Trusts of personal property are subject to the same rules as those of real estate. 1 *R. S.* 773, § 2. And the trust of the personal property in this case being to receive interest and income, *and pay them over*, and not to *apply them to the use* of the *cestuis que trust*, is void; and consequently the whole trust, and the devises and bequests dependent on it, are invalid.

VI. The trust is the principal part of, indeed almost the whole will; and if void, the will itself is void, with perhaps the exception of the two devises

[ *656 ]

relating to the house and lot in Pearl street, and the farm in *Middlefield. [ *657 ]

The counsel for Mr. Kane adopts and insists upon most of the points made on the part of Mrs. Kane.

*Points on the part of the respondents :*

I. The second section of the decree appealed from, by which the validity of the third clause of the will is established, is in all respects in conformity with the rules of law and principles of equity, and should be affirmed. Two questions only are presented by this part of the decree.

1. Are the directions to the executors in the third clause of the will, to convert the real estate therein mentioned into money, valid, either as a trust or as a power in trust ? and,

2. Is such real estate in equity to be considered as converted into personalty from the death of the testator ?

II. The fourth section of the decree appealed from, by which the seventh clause of the will, which provides for the support of the testator's two nieces after the death or re-marriage of their mother, and while they are under the age of twenty years, is declared valid, is legal, and should be affirmed.

1. The trust created by this provision of the will, whether it be deemed a trust of real or personal estate, is valid.

2. The power of alienation cannot be suspended by this provision beyond the duration of two lives in being at the death of the testator, to wit, the lives of the two nieces.

III. The accumulations directed by the third and eighth clauses of the will, commence at the death of the testator, are for the sole and exclusive benefit of the two infant nieces who were minors then in being, the one half for the exclusive benefit of each, and to be paid over to them or their personal representatives, absolutely, when they shall respectively have arrived at the age of twenty years, or when they shall have married before that time ; and consequently must cease at or before the expiration of their minority. The fifth clause of the decree appealed from, establishing the validity of these accumulations, should therefore be affirmed. 1 *R. S.* 726, § 37 ; 773, § 3.

IV. The sixth section of the decree appealed from, is the legal and correct exposition of the eighth clause of the will, *and [ *658 ] of the effect of the statute on the estate or interest thereby devised and bequeathed, and should be in all things affirmed.

1. If this were to be deemed a trust of real estate, it is valid under the 3d subdivision of the 55th section of the statute. *See Chancellor's opinion.*

2. But the trust created by this will is a trust of personal estate, the objects of which are not limited by the statute, and the purpose for which it was created being legal, it is valid. *See Chancellor's opinion.*

3. The devise or bequest of one half of the income to each niece, after the accumulation ceases, is a future interest in personal property, and must therefore be subject to the rules in relation to future estates in lands ; consequently the persons beneficially interested in the trust, to receive such income, cannot assign or dispose of such interest during their lives. *See Chancellor's opinion.* 1 *R. S.* 773, § 2. *Id.* 730, § 63.

V. The 7th section of the decree appealed from, by which so much of the 9th clause of the will as bequeaths the income of the niece who shall die without issue to the survivor for life is declared valid, and subject to the same restriction upon the power of alienation, should be affirmed for the reasons assigned in support of the last point. *See Chancellor's opinion. See also* 1 *R. S.* 723, § 17, *as to two successive life estates.*

VI. All that part of the 8th section of the decree appealed from is valid, and should be affirmed. *See Chancellor's opinion.*

The directions in that part of the 8th section of the decree which has been appealed from, necessarily follows from that part of the same section of the decree which has not been appealed from, and which is therefore conceded to be legal.

VII. The 9th section of the decree appealed from is valid, and should be affirmed. *See Chancellor's opinion.*

VIII. All that part of the 16th section of the decree appealed from is legal and valid, and should be affirmed.

[ *659 ]        The first part of the 10th section of the decree, by which the *provision in the 11th clause of the will as to the disposition of the income of the estate after the death of both nieces, *in case one only* shall leave issue, and as to the limitation of the absolute ownership after the minority of the youngest child shall have terminated, is declared to be illegal and void, is not appealed from, and is therefore admitted to be legal.

All that part of this section of the decree which is appealed from, is nothing more than the directions necessary to be given, if that part of the decree not appealed from is correct, and its correctness cannot now be disputed.

IX. The 11th and 12th sections of the decree appealed from, directing the mode and manner of taking and passing the accounts of the executors, are legal, and should be affirmed.

X. The appellants should be charged personally with the costs of this appeal, to be taxed in favor of the respective respondents, and the executors should be allowed their counsel fees and expenses out of the capital of the

personal estate, and the counsel fees of the guardian ad litem of Jennet M. Cook should be paid out of the accumulated income in the hands of the executors, belonging to her.

After advisement, the following opinion was delivered:

By COWEN, J. An easy solution of the main difficulty raised by these appeals, is to be found in that feature of the will which converts the whole of the property under question into personal estate. A trust in the executors is created with imperative directions to sell as soon as may be the testator's whole real estate, except certain specified portions not now in question, and appropriate the avails to the purposes of his will, in connection with his other personal property. It is of the nature of such a trust that immediately on the testator's death, and for all the purposes of testamentary disposition, the *real* becomes *personal* property in every sense; and must be treated precisely as if it had been so before. This is a position so entirely clear, that nothing was introduced among the printed points of either *appellant, to the contrary. It was not denied in argument to be     [ *660 ] the settled doctrine; but, as an incidental complaint was thrown out, that it is but a fiction, which ought not to stand in the way of the revised statutes when they come to destroy trusts, we may as well look at the strength of the footing which it has obtained in our law. In Jarman's edition of *Powell on Devises*, it is said, " on the principle that equity considers that as done, that ought to have been done, it has been long established that money directed to be employed in the purchase of land, and *land directed to be sold, and turned into money*, are to be considered as that species of property into which they are to be converted; and this in whatever manner the direction is given, whether by *will*, by contract, &c. It follows, therefore, that every person claiming property under an *instrument* directing its conversion, must *take it* in the *character* which that instrument has impressed upon it, &c. This principle is obviously founded in justice and good sense, &c. It is, besides, too well settled by numerous authorities to be called in question at this day." An unbroken series of cases are cited by the book, ranging from *Charles* 2, to the time when the learned editor was writing. 2 *Jarman's Powell*, ch. 4, *p.* 60. In a late work devoted to the doctrine of *equitable conversion*, it is said to be " highly interesting, as involving consequences of great importance to the community at large." And though difficulties may arise in its application, it is reducible to some of the most just and simple principles on which the jurisprudence of our courts of equity has been formed." *Leigh and Dalzell on Eq. Conversion*, ch. 1, *p.* 1. It will be seen by the cases cited in 2 *Powell*, 64, and *Leigh and Dalzell*, 48, that where executors are clothed with a trust to sell the real estate for

money, and appropriate the avails to the uses of the will in the form of personal property, no doubt was ever entertained that it must be considered in equity, the same as if the testator had himself sold land, and then bequeathed the consideration money. Sitting in a court of equity, therefore, we can no more refuse to consider the whole of the real property in question as personal, than we could in a court of law, if the testator had himself chosen *to make it physically so, and then had [ *661 ] bequeathed it. By his own act he had the power to throw it into this shape either by sale or by will; and if in either way it be thus withdrawn from the operation of the statute concerning trusts, it is only in the exercise of a power by the absolute owner of property which no court or legislature ever thought of denying. This is the first time in centuries, and indeed the only time in our judicial history, that a doubt has been started on the effect of provisions such as are contained in this will. In the progress of the inquiry, therefore, I shall assume that the question stands entirely on the power of a testator to create a trust and limit estates in his personal property. The doctrine of trusts and limitations of real estate has nothing to do with it, farther than the revised statutes may have expressly brought personal property to the same footing or measure.

The revised statutes concerning uses and trusts, 1 *R. S.* 721, 2*d* ed., have of themselves nothing to do with personal property, either directly or by reference. That statute declares that uses and trusts, except as authorized and modified in article second, are abolished. § 45. The whole article is then in terms confined to *real estate* or its rents and profits. The 55th section declares and defines the only express trusts which can be fastened on such estate; and there the only trusts at all analogous to those now in question are spoken of in the third and fourth subdivisions of the section, viz. a trust to pay over the rents and profits, and to accumulate them for the benefit of persons named or not in *esse*. There is nothing in any part of the statute tying up the trust in *personal* property to receiving and applying the income to the use of any person, or otherwise restricting the mode of appropriation. The third subdivision speaks of the rents and profits of *lands* only. The right to these are, by § 63, declared inalienable. Such a provision has been, therefore, looked upon by several cases as furnishing one sort of element by which a limitation may be destroyed. In any view, the statute should be construed with great strictness. It is supposed that 1 *R. S.* 761, 2, 2*d.* ed. § 1 *and* 2, place both real and personal [ *662 ] property *on the same narrow footing as to a *declaration of trust*. But that is not so. These sections relate exclusively *to limitations* of *future* or *contingent* interests in personal property, making *them* subject to the same rules as limitations of *future* estates in lands. The word *limitation*, when applied to future or contingent estates, regards the time at,

or condition upon which they are to vest, either as an interest or in possession. The same word when applied to a vested estate, regards its duration. *Toml. Dict. Limitation of Estate.* 1 *Preston on Estates*, 38, 40, *Am. ed. of* 1828. In neither sense has it any respect to the particular manner in which the beneficiary is to be supplied under the trust. The latter is a mere *appropriation* of the fund ; and may at common law, be as various as the purposes of the donor. *Limitation* is another matter. When the interest is vested, this may be long or short according to the pleasure or caprice of the donor, because the land may always be aliened. But when the limitation is on a contingency it must be confined within certain boundaries of time ; otherwise you run into an objectionable perpetuity. This is about all that is meant by the various provisions of the revised statutes against perpetuities. Thus the revisors say, in commenting on § 14, 1 *R. S.* 718, 2d ed., " To prevent a possible difficulty in the mind of those to whom the subject is not familiar, we may also add that an estate is never inalienable, unless there is a contingent remainder, and the contingency has not yet occurred. This is the meaning of the rule of law prohibiting perpetuities, and is the effect of the definition in § 14." 3 *R. S.* 573, 2d ed. Under the old law, the objection commonly arose on executory devises. I know that in the case of real estate, § 14 has been extended by construction to a vested interest under § 55 and § 63. But that was grounded on the restraint of alienation arising from the mode of appropriating rents and profits in a trust of *real estate*, and *real estate* only ; not by reason of the contingent limitation. In the case of personal property, we are still left to the rule in the revisers' note. We are, on the point of perpetuity, to regard the contingent character of the limitation alone ; and if the event be *not too    [ *663 ] remote, the limitation is valid, whatever be the form in which the trust is to be executed. The provisions in regard to estates in personal property are made by a distinct title of the statute, and profess to treat of accumulation and *expectant estates only*. *Tit.* 4, *p.* 761 *of vol.* 1. This title is in detail confined to those objects. The first section limits the suspension of absolute ownership to two lives. This suspension, as we have seen, is predicable of *contingent estates* only. Then the second section is, that in all *other* respects, limitations of *future* or *contingent interests* shall be the same as if the subject were real estate. The remaining three sections of title four regard accumulation, which may, and in its nature, must be generally conducted through the medium of a trust. And here alone do we find any thing directly cutting down the power to create trusts in personal property.

But counsel recur to the broad meaning of the words used in the statute of trusts. " *Trusts*, except as authorized and modified in this article, are abolished." 1 *R. S.* 721. We are told that the only trusts authorized by

the article are those implied by law, § 50, and the few express trusts enumerated in § 55.   Taking the broadest abstract meaning of the word *trusts,* and disregarding the context, the counsel are right in saying that all express trusts in personal as well as real property would be included.   The clause in a will directing an executor to apply a portion of the assets to any particular purpose, as to procure a monument or an epitaph, would be void.   So all charitable trusts, and, for aught I see, all legacies in a will.   These and the like are no less than express trusts.   All that the law would imply as the duty of an executor, would be to collect and pay debts with funeral expenses, and distribute the balance of the estate among the next of kin.   All the express trusts of business life, this side the grave would also be abolished.   Instructions to servants, factors, auctioneers, all special agencies accompanied by bailment would be destroyed.   A vivid imagination might even carry the provision into the moral world, and say that men should no longer repose a trust or confidence in one another.   By cutting off all that follows in and *after the first section, one knows not what would set bounds to the extravagance of construction.   Whereas the very first section, when read through, shows clearly the limitation under which it must be taken.   The whole of it is thus, § 45 :  " Uses and trusts, except as authorized and modified in this article, are abolished ; and every estate and interest *in lands* shall be deemed a legal right cognizable as such in courts of law."   Every subsequent section of the article, from 45 down to 72, uses language most obviously applicable to technical trusts in *real estate,* and nothing else.   I have already shown that there is nothing in the subsequent provisions concerning personal property which can, without a perversion of language, be made referable to any provision in this article.   They refer to the next previous one on estates ; to what extent it is not necessary to enquire while considering the mere declaration of trust.   The learned chancellor being clearly right in saying that this was so far a common law matter, it becomes unnecessary, at least for the present, to institute an examination of its validity on the hypothesis that it comes within the 55th section.

[ *664 ]

The only question remaining is, how far the limitation of the trusts conform to the provisions in article first concerning the creation and division of estates.   The bequests of annuities to the sister in law and mother of the testator are distinct independent vested legacies payable out of the principal of the fund.   The executors are, by the will, created trustees with the express duty to make the payment.   The whole stands on the footing of any other common pecuniary legacy ; and unless the statute has abolished the trust in executors to pay legacies, it is valid.   The same thing may be said of the neices, so far as the legacies are for their benefit personally.   *Quoad hoc* there is no contingent estate in question ; but the limitation is of a pres-

ent vested estate in each for life. The provision for accumulation during their minorities is expressly authorized by the statute. 1 *R. S.* 767, § 3, *sub.* 1.

Passing beyond the immediate lives of the nieces, we do find ourselves in the region of future and contingent estates ; and here the statute of limitation of estates becomes applicable. *Admitting the cross [ *665 ] remainders between the neices to be contingent, it cannot be pretended that they are void as being too remote. They are clearly within the compass of two lives in being. We then come to the issue of the nieces. The limitation of income to them was a contingent remainder. So to the surviving husband of the niece who should die leaving issue, living the other niece. The husband being unmarried, and the issue unborn, both events and persons were uncertain. The final vesting of the absolute property is also made to fluctuate on various events, but the provisions in these respects aim at no events which can be questioned as too remote. All the contingent provisions as to income in favor of any person beyond the nieces, were cut off by the chancellor as illegal and void ; and that part of the decree which does *this,* is not appealed from. *Pro tanto,* he held that the income was undisposed of and ordered it to be paid by the executors to the testator's next of kin or heirs according to the nature of the estate out of which it may arise. That part of the decree which makes this consequential distribution, is appealed from ; but no distinct point was made against it, and very little said about it on the argument. It struck me at first that the whole income arising from the avails of the real estate, even the income undisposed of by the will, should be considered as personal estate, and go to the next of kin. However, another view is, that, so far, the income being untouched by the will, it is not converted ; but left to its original character, as income from real estate. This may be refining too much ; but without farther discussion, I am not prepared to say that the refinement has no foundation. The question seems to be practically of but little moment in any point of view. There is nothing that I see in the statute concerning the limitation of estates, carrying any of this undisposed income to the next eventual taker.

The most important consequence sought to be drawn from the will being void in respect to these remote collateral provisions, is, that therefore the whole is necessarily void. Nothing is better settled than the direct contrary ; and the contrary was held by this court in the late case of *Darling* v. *Rogers,* 22 *Wendell,* 483. That a will or any [ *666 ] other instrument passing an estate may be void in part, and yet good for the residue, was never doubted, when the division into good and bad parts was made by force of the common law ; and *Darling* v. *Rogers* maintained a trust deed under the revised statutes in such parts as were good, though one declaration of trust was void. I know there are a sort of

standing quotations to the contrary, of cases decided by this court. They appear upon the printed points: *Coster* v. *Lorillard*, 14 *Wendell*, 265 ; *Hawley* v. *James*, 16 *id.* 61 ; *Root* v. *Stuyvesant*, 18 *id.* 257. So far from sanctioning the doctrine for which they are cited, the opinion of every judge who spoke to those cases expressly denied it. It is true, that the wills in question went pretty much by the board ; but all that can be said as a consequence is, that the conservative rule was not liberally applied. If that be so, it is sufficiently unfortunate ; for there is no rule of law which calls for greater latitude and even ingenuity in enlarging and extending it. The most able and safe judges have said that the courts should be astute in allowing it a comprehensive operation for the giving effect to all instruments, and especially to last wills and testaments ; and though some parts may be contrary to the rules of law, yet all other parts should be saved. Any court acting systematically upon the opposite principle, would be a great evil.

But the sixth and seventh clauses of the decree pronounce the *income* in the hands of the nieces and their issue *inalienable*, as if it came within the 63d section concerning express trusts. I have already given my reasons why this cannot be so : and perhaps the appellants might, on a proper course, have had the decree modified in the parts mentioned. The learned chancellor thought that if the income were derived from real estate, the trust would yet have been valid within the third subvision of § 55. Perhaps he is right ; but at any rate he is clearly so in saying that all, so far, is personal estate ; and therefore I have inferred that the question cannot arise under that subdivision. The rules of real property are not impressed upon personal property, except as to *future contingent limitations.*
[ *667 ] Here the income *is *vested* in the nieces ; though I admit it is future and contingent in the remainders. But the 63d section is not a section of *limitation.* It merely impresses an inalienable character on the income of real property, which happens *to be appropriated* in a certain form. It disqualifies the beneficiary to alien. It treats him as it would an infant, by imposing a personal disability. It is in derogation of common right, and ought not to be extended by analogy or construction. The decree aims so to extend it. But I am not prepared to say that it should therefore be modified. There is, to be sure, a simple appeal from those parts of it which I think are erroneous ; but the points made, and the whole drift of the argument by the counsel for the appellants, were opposed to the idea that the income of personal estate can be put in trust for any other purposes than are allowed to rents and profits of land ; and though the respondents denied this, they still maintained the chancellor's reasoning, from construction and analogy. The question of inalienability, therefore, has not been argued. The counsel on both sides agreed in the propriety of the income being considered inalienable, provided the will is to be maintained in its prin-

cipal provisions, as it clearly must. Beside, the declaration in the decree, that the income shall be inalien.ble, cannot have any effect, except as a temporary direction and qualified protection to the executors. A decree that property in A.'s hands shall be inalienable, will not make it so. Suppose he takes a title in fee simple under a decree for a specific performance, and the decree should go on to say that it should remain inalienable in his hands; no one would suppose that a perpetuity could be created in this way, though the decree should profess to be founded on the construction of some parts of the revised statutes. Property is alienable; and no court, as such, can impress a condition upon it, which shall be repugnant to its very nature. The alienee would not be bound, in the case put, nor would he, for the same reason, in the case before us. On his coming in as a party, the question would be entirely open as to the right, though the trustees would not be subjected to costs for refusing to pay him. I presume, however, the point was not *made and argued even in the court below; and for that   [ *668 ] reason, if no other, we ought not finally to pass upon it now.

I am of opinion that the decree is not in any part so impeached that this court ought to interfere, either by reversing or modifying it. Therefore it should be affirmed.

On the question being put, *Shall this decree be reversed?* all the members of the court (*eighteen* being present,) with one exception, voted in the *negative*, whereupon the decree was AFFIRMED.