Dupre *v.* Thompson.

--- --- ---

New-York Special Term, October, 1848. *Edmonds,* Justice.

## Dupre and others *vs.* Thompson and others.

A court of equity will not set aside a voluntary conveyance, on the application of the grantors, on the ground that they were ignorant as to what would be its legal effect and operation, and made a mistake in point of law.

Courts do not undertake to relieve parties from their acts and deeds fairly done, on a full knowledge of the facts, though done under a mistake of the law.

This rule prevails in all cases of compromises of doubtful, and perhaps in all cases of doubted, rights, and especially in all cases of family arrangements ;

but is relaxed where there is a total ignorance of title, founded on the mistake of a plain and settled principle of law, and in cases of imposition, misrepresentation, undue influence, misplaced confidence, or surprise.

It is now to be regarded as well settled, notwithstanding the earlier cases, that any legal trust is sufficient to sustain a devise or conveyance to a trustee, of an estate commensurate with such trust, without reference to the illegal trusts which the testator or grantor has attempted to create in the same estate. And that in trusts of personal property, a suspension of the absolute ownership of a part, illegally, will not render void the disposition of the residue.

The statute is to be allowed to work out the destruction of the legal parts, only when they would of necessity uphold the illegal parts with them.

A conveyance of personal estate to trustees, in trust to invest the same and pay the interest to certain specified persons for life, with a limitation to the children of each upon their respective deaths, may be valid as to the first takers, although the limitations over be void.

IN EQUITY. This was a bill in equity to set aside a deed of trust from the next of kin of Susan Durand to the defendant Thompson. On the 25th of January, 1834, Mrs. Durand, being the owner of certain personal property, made a will disposing of all her estate among her three daughters, Mary, wife of Joseph Dupre, Cecilia, wife of G. F. R. Johnston, and Louisa Durand. On the 8th June, 1842, Mrs. Durand died, but her intended will was inoperative by reason of a defective execution of it, only one person having witnessed it. The daughters and their husbands being desirous to remedy the defective execution of the will, executed a confirmatory instrument, whereby they granted, released and renounced to Thompson and another, (since dead,) the executors named in the will, all their right, title, interest and claim to all and singular the assets and effects of the deceased, to take, receive, and hold the same according to the terms of the intended will, and upon the trusts therein declared. The proposed will gave the interest of one-third of the estate to Louisa, the principal to be invested by the executors, and its income to be received by them and paid over to her. On her death, the principal to her children, if any, surviving, with power of disposition to her, however, by will. Another third was given to Mary, wife of Dupre, in the same manner, and the other third the executors were directed to retain in their hands, and keep invested, and apply the income

from time to time to the support and maintenance of the other daughter, Cecilia, wife of Johnston, and of her children during her life, at their discretion, and on her death to make similar application for the support, education and maintenance of her children until they should respectively attain the age of twenty-one, and on their attaining that age, she gave to each of them an equal share of such third. And it was also provided that in case either of the daughters should die, leaving no children surviving them, and Louisa or Mary should not dispose of their shares by will, the share of the person so dying should go to the survivor, to be added to the capital of her original share, and to be deemed originally part thereof, to be enjoyed in the same manner and to be subject to the same investments and trusts as in the original shares, both as to capital and income.

A post nuptial settlement had been made between Mr. and Mrs. Johnston, and R. W. Martyn and others, as trustees, in August, 1833, of all interest and estate which by virtue of his marriage, Johnston had or could claim in and to his wife's personal estate, and her share of her father's real and personal estate, which contained a covenant that all sums and personal property to which she might be entitled from her mother, was also thereby assigned to the trustees, subject to the trusts of the settlement. The bill was filed in the names of Dupre and wife, Johnston and wife, and Mrs. J.'s trustees under the marriage settlement, and Louisa Durand, against Thompson, and Mrs. Dupre and Mrs. Johnston, to set aside the deed of confirmation as it was called, as being void, and to have the estate of Mrs. Durand, which was personal property only, distributed as in case of intestacy.

*William Bliss,* for the plaintiffs, claimed that the deed was void because, (1.) It sought to establish a will which was absolutely void; (2.) The power of alienation of at least two-thirds of the whole property was suspended for more than two lives in being at the making of the instrument; (3.) The trustees of Mrs. Johnston, under her marriage settlement, had not executed it.

Dupre v. Thompson.

*D. Lord*, contra, insisted that the object was not to confirm a void will, but to create an estate upon the trusts mentioned in another paper; that each daughter had a grantable interest; that it was a voluntary instrument which the parties making it could not set aside except for fraud or mistake, which had not been suggested; that there was no suspension of the power of alienation for a moment; that the grant to Mrs. Johnston's children vested *in presenti*, the possession only being postponed until majority; and that if the limitations over, after the death of the daughters, were void, the life estates of the daughters were good, and they being living, no bill could be filed now to set the deed aside.

EDMONDS, J.° There are two reasons why I cannot grant to these plaintiffs the decree they seek, to set aside the whole of this trust deed. *First.* It was a voluntary conveyance on their part, and they seek to vacate it, not on the ground of a mistake as to matter of fact, but because they were ignorant what would be its legal effect and operation, and had made a mistake in a point of law. Now courts do not undertake to relieve parties from their acts and deeds fairly done on a full knowledge of the facts, though under a mistake of the law. (*Lyon* v. *Richmond*, 2 *John. Ch. R.* 51. *Clark* v. *Dutcher*, 9 *Cowen*, 649. *Hunt* v. *Rousmanier*, 8 *Wheat.* 174; *S. C.* 1 *Peters*, 1.) This is the general rule, that a mistake of this character is not a ground for reforming a deed founded on such mistake. But I do not mean to assert that there are no exceptions to the rule, or that there may not be cases in which a court of equity will relieve against a plain mistake arising from ignorance of the law. The rule prevails in all cases of compromises of doubtful and perhaps in all cases of doubted rights; and especially in all cases of family arrangements; and is relaxed where there is a total ignorance of title, founded in the mistake of a plain and settled principle of law, and in cases of imposition, misrepresentation, undue influence, misplaced confidence, or surprise. And it may safely be affirmed, on the highest authority, as a well established doctrine, that a mere

naked mistake of law, unattended with any such special cir-
cumstances as have been suggested, furnishes no ground for
relief. (1 *Story's Eq. Juris.* §§ 137, 138.)  The case under
consideration appears to me clearly to come within the general
rule, and not within the exception.  There is no pretence of
imposition, misrepresentation, undue influence, misplaced confi-
dence, or surprise.  These daughters, with the consent of their
husbands, being seised of an absolute ownership of this property
in severalty, saw fit to settle it upon themselves for life, and
upon their children in fee after their death, so that it might be
exempt from any control of, or responsibility for, any husbands
which they then had or might afterwards have.  So far they
understood their rights, and seem to have had a due compre-
hension of what they desired; and so far no mistake of either
law or fact is suggested.  But in attempting to provide for the
contingency of the daughters dying without children, it is al-
leged that they have made some limitations over which are
void, which it is supposed they would not have made if they
had well understood the law.

Allowing all this to be so, (and it is the strength of the case
as made out for the plaintiffs,) I see in it nothing to bring it
within the exceptions of the rule, but on the other hand, so far
as two of the plaintiffs are concerned, a desire to take that
which belonged originally to the wives, from a very proper
settlement of it upon those wives and their children, and subject
it to their own control and a liability to their debts.  The claim
does not commend itself to the favor of the court, and I cannot
allow it, unless compelled to do so by some stern rule of law,
which I have not yet found, nor been referred to.

*Second.* The other ground is that if these limitations over,
after the death of the tenants for life, are void, as is claimed, it
by no means follows that therefore the trust wholly falls to the
ground and the plaintiffs become entitled to have it declared
void.

I was a member of the court of errors when the case of Lor-
illard, the pioneer case under our new statute of uses and trusts,
came before that court, and I always regarded with favor the

idea of the chancellor of applying the doctrine of approximation to that will, and applying the nullification of the statute to those parts alone which absolutely required it. And I regretted to see the court of last resort use the instrument of destruction so widely as they did in that case, and in that of James' will; and I accordingly rejoice now to perceive that as our courts have progressed in the task of interpreting that statute, they have returned to the sound views then put forth by the chancellor. It is now to be regarded as well settled, notwithstanding the earlier cases, that any legal trust is sufficient to sustain a devise or conveyance to a trustee, of an estate commensurate with such trust, without reference to the illegal trusts which the testator or grantor has attempted to create in the same estate. (*Hawley* v. *James*, 5 *Paige*, 458. *Darling* v. *Rogers*, 22 *Wend.* 483. *Gott* v. *Cook*, 7 *Paige*, 521. *Irving* v. *Dekay*, 9 *Id.* 527. *Kane* v. *Gott*, 24 *Wend.* 666.) And that in trusts of personal property, a suspension of the absolute ownership of a part, illegally, will not render void the disposition of the residue. (*Van Vechten* v. *Van Veghten*, 8 *Paige*, 128.) The statute is to be allowed to work out the destruction of the legal parts, only when they would of necessity uphold the illegal parts with them. The effect of the operation of this rule upon the case in hand is easily to be seen. It is to sustain this trust for at least the lives of two of the daughters, whatever may become of the remainder over after their deaths, and sustaining the deed thus far does not necessarily uphold any invalid limitations over.

The bill of complaint does not ask to have those limitations over declared void; it seeks to set aside the whole trust deed; to have it decreed that Susan Durand died intestate; that an account may be taken of what has come into the hands of the trustee; and that the residue, after due administration, be paid over to the plaintiffs. This cannot be done, under the view I have taken of this case. Thompson is holding under a trust, valid as yet, and it will be time enough to raise the other questions in the case when he shall claim to hold under one that may become invalid by some future occurrence. But it must

---

not be inferred, because I have viewed the case as if the limitations over after the death of two life tenants were void, that I intend to hold that they are so. I have, it is true, examined that question, but I purposely abstain from deciding it; because my decision on that point is not necessary to the determination of this case.

There is only one other point which it is necessary to consider; to wit, the objection that Mrs. Johnston's trustees under her post nuptial settlement were not parties to the trust deed executed with Thompson. That marriage settlement was executed nine years before Mrs. Durand's death, and of course conveyed no title to Mrs. Johnston's trustees to the inheritance which she thus subsequently derived from her mother. Under the covenant contained in it, she and her husband might have been obliged to convey to them, in a proper manner; but until that was done, the title to, and ownership in, the property thus inherited, was in her and her husband, and it was not necessary to the validity of the trust deed to Thompson that the trustees under her marriage settlement should unite in executing it.

How far the execution of the deed by her and her husband can operate to give one set of trustees a preference over the other, is a question which does not arise here.

