HENRIETTE B. POWER, INDIVIDUALLY, AND AS EXECUTRIX OF JOHN H. POWER, DECEASED, APPELLANT, *v.* HUGH CASSIDY, SURVIVING EXECUTOR, ETC., OF JOHN H. POWER, DECEASED, AND OTHERS, RESPONDENTS.

*Trust — when beneficiaries sufficiently ascertained.*

A testator having by his will first disposed of two-thirds of his estate, therein provided as follows: "the balance I give to my executors, to be divided by them amongst such Roman Catholic charities, institutions, schools or churches in the city of New York, as a majority of my executrix and executors shall decide, and in such proportions as they may think proper." At the time of the testator's death there were in the city of New York numerous incorporated Roman Catholic charities, institutions, schools and churches authorized to take real and personal property by devise or bequest.

*Held,* that it was to be presumed that the testator intended to confine his bequest to such charities, etc., as were incorporated and authorized to take by bequest.

That the objects of the testator's bequest were sufficiently ascertained and certain, and that the trust was not invalid by reason of the uncertainty of the beneficiaries.

APPEAL from a judgment entered upon the trial of this action by the court without a jury.

The action was brought to procure a construction of certain portions of the will of John H. Power, deceased. The material portions of the will are as follows, viz. :

"After my lawful debts are paid, I give and bequeath all my property, both real and personal, unto my executrix and executors hereinafter named, that is to say : To my beloved wife Henriette B. Power, and to my friends Lewis J. White and Hugh Cassidy, of the city of New York, all of whom I have named as executrix and executors of this my last will and testament, to have and to hold the same and every part thereof unto the said parties, their heirs and assigns forever, upon the trusts nevertheless that they are to collect the moneys due on the bonds and mortgages due to me, and also the rents of my property, and sell and dispose of my stocks ; and out of the proceeds of the sale of my property or of the income thereof, I direct my executrix and executors to pay to my beloved wife Henriette the sum of eight thousand dollars per year, in half-yearly installments of four thousand dollars.  *  *  *

I hereby appoint my wife, Henriette, Lewis J. White, and Hugh Cassidy, of the city of New York, executrix and executors of this my last will and testament, with full power to them, or the survivor of them, to sell all my real and personal estate, at such times as they may deem proper, with the exception of the house and lease of lot on Fifth avenue, between Fiftieth and Fifty-first streets, which I wish sold as soon as possible, and with power to them to go on and finish the same, and take the expense of finishing out of my estate.  All the rest, residue and remainder of my estate, both real and personal, I give and devise one-third thereof to my beloved wife, Henriette B. Power ; one-third thereof to my nephew, Peter Rice, of the city of New York ; and the balance I give to my executors, to be divided by them amongst such Roman Catholic charities, institutions, schools or churches in the city of New York, as a majority of my executrix and executors shall decide, and in such proportion as they may think proper."

The following is the opinion delivered by the court at Special Term :

VAN VORST, J.:

By the final clause of his last will and testament, John H. Power, the testator, after giving and devising one-third of the rest, residue and remainder of his estate to his wife, and one-third to his nephew Peter Rice, disposed of the remainder in these words:

"The balance I give to my executors, to be divided by them among such Roman Catholic charities, institutions, schools, or churches in the city of New York, as a majority of my executrix and executors shall decide, and in such proportion as they may think proper."

The evidence shows that there were, at the death of the testator, regularly organized and incorporated Roman Catholic charities, institutions, schools and churches, located in the city of New York, competent to take the testator's gift, and that, after the death of the testator, Lewis J. White and Hugh Cassidy, the executors of the testator, being a majority of the "executrix and executors" named in the will, decided, and in writing designated what Roman Catholic institutions of charity, asylums and hospitals, should take the one-third part of the testator's estate above designated, and the proportions of each, all of which institutions are organized as corporations. It is objected on the part of the plaintiff, executrix and widow of the deceased, that the above clause of the will is invalid and inoperative in law, and she claims that the portion of the estate therein attempted to be given is undisposed of. The learned counsel for the plaintiff, in support of his view that the provision is void, cites from Story's Equity Jurisprudence, §§ 979, 964, as follows:

" Courts of equity carry trusts into effect only when they are of a certain and definite character. If, therefore, a trust be clearly created in a party, but the terms by which it was created are so vague and indefinite that courts of equity cannot clearly ascertain either its objects or the persons who are to take, then the trust will be held entirely to fail, and the property will fall into the general fund of the author of the trust."

There can be no question of the correctness of this principle governing courts of equity. It has been repeatedly acted upon and applied in the courts of this State. (*Owens* v. *The Mis-*

*sionary `Society*, 14 N. Y., 380; *Downing* v. *Marshall*, 23 id., 382; *Sherwood* v. *American Bible Society*, 1 Keyes, 561; *Holmes* v. *Mead*, 52 N. Y., 332.)

After a careful consideration, I see nothing really vague or uncertain in the disposition made by the testator. There is no uncertainty with respect to the trustees, for they are named and have power to act; nor, in a true sense, is there uncertainty as to the particular object of the testator's bounty. He was a Roman Catholic, and his desire was that schools and institutions of charity connected with his church should share in a definite portion of his estate. It is evident that the object which the testator would favor was the religious teaching and work of charity in which his church was engaged, and that not in an universal sense, but with limitations as to locality.

The church, the school, the institution in the city of New York, were the particular agencies through which the testator would accomplish his religious and benevolent purposes. There is nothing vague, indefinite or uncertain with regard to these agencies as a class. They are distinct, and can readily be separated from the large number of religious and charitable organizations of New York maintained by other Christian or benevolent bodies. They, in fact, constitute a limited and well-defined class; have each a distinct organization, and are bodies corporate.

The duty of designating the particular institutions from the general class is devolved upon the executrix and executors, who are also to determine the amount each should receive; and when that has been done, the action would have the same effect as though the names of the particular institutions and charities were written in the will, and a court of equity would have no difficulty in inforcing the trust by its judgment. In *Holmes* v. *Mead* (*supra*), the income of a sum of money was directed to be paid in and for the support of the rector, etc., for the time being, of St. Mary's church, Beechwood, for the support of a clergyman employed as a missionary, or otherwise to officiate, and who shall officiate therein.

ALLEN, J., at p. 343, says: " The beneficiary under the trust is the minister officiating at the church named for the time being. Although the particular individual is not named, he is so described

that he is capable of being identified and distinguished from every other human being. There is nothing uncertain or indefinite in the description. A *cestui que trust* need not necessarily be described by name; any other designation or description by which he may be identified will do as well." (*Wilkinson* v. *Lindgren*, L. R., 5 Ch. App., 570.)

Within the limits prescribed by the testator, I cannot think that the trustees would have any difficulty in designating the particular objects to participate in the testator's bounty under the will. They do not seem to have had any, and have by their decision named them. It is not left to the court to select the donees, and the only duty left it, is to give effect to the testamentary disposition, by its judgment.

" Where the gift is capable of being executed by a judicial decree, I know of no reason why the court should refuse to execute it." (*Williams* v. *Williams*, 4 Seld., 548.) In the case last cited the gift was for a permanent fund for the education of the poor, who should be educated in the academy in the village of Huntington, or in case of the destruction of the academy by fire or otherwise, " then in the school next west of the academy."

It was held that " a rule of ready application is given for selecting the objects of the testator's bounty." Although the authority of *Williams* v. *Williams*, so far as it favors the existence of the law of charitable uses in this State, has been overruled by later cases in the Court of Appeals; still, the conclusion as to the validity of the gift under consideration in that case, and above referred to, has not been disturbed.

In *Owens* v. *The Missionary Society* (14 N. Y., 408), it is said: " To avoid misapprehension it may be proper to add that nothing which has been said is intended to deny the power of courts of equity in this State to enforce the execution of trusts created for public and charitable purposes, in cases where the fund is given to a trustee competent to take, and where the charitable use is so far defined as to be capable of being specifically executed by the authority of the court, even although no certain beneficiary other than the public at large may be designated."

There could be no reasonable doubt that if, instead of devolving upon his executors the duty of selecting from a limited class of

charitable societies those to share in his bounty, the testator had made the selection himself, and written the names of the beneficiaries in the will, the gift would have been legal. It appears to me it is no less so from the fact that he has entrusted an office which he could have himself performed — that is, the making of a selection — to the decision of the trustees appointed by him, he designating the special class from which the selection was to be made. Such decision, when made, exhausts the power of the trustees on that subject, and having been made, and the beneficiaries designated being parties to this action, together with all others interested in the estate, there is not the least difficulty on the part of the court in making a just, complete and protective judgment, by which the whole estate may be justly and, according to the will of the testator, finally distributed.

I do not think the benevolent intentions of the testator should be defeated, through the interposition of imaginary or apprehended obstacles, when the case is presented in a form in which all just ground of difficulty or uncertainty is removed, and in a manner which the testator contemplated and expressly directed; nor is the fact, if it be so, that some of the Roman Catholic institutions in the city of New York were at the death of the testator unincorporated, any objection to the validity of the gifts in question. It is enough that there were schools and institutions answering the description of those named in the will incorporated and competent to take. We are not to presume that the testator intended to make an illegal disposition, or select objects incapable of receiving his gifts. The presumption is that he meant that his trustees should designate competent beneficiaries, and this they appear to have done. The designation by the two executors — a majority of the " executrix and executors " — was sufficient.

One of the executors, Mr. White, was ill. The executrix was invited to be present at the designation and selection; this she declined. By a refusal or omission to act with them after notice, she could not defeat the will ; and in view of the illness of Mr. White, the majority were justified in making the selection. Mr. White died during the month in which the selection was made. I construe the letter of the executrix to be a refusal to join with her associates in the trust, in making the selection at that time.

In respect. to the other matters, I am of the opinion that the
widow is entitled not only to the annuity of $8,000 per annum
during her natural life, but also to one-third of the residue of the
estate, including the fund or property out of which the annuity is
raised ; but the principal of that fund cannot be impaired or dis-
posed of by her, to take effect during her life. The fund must
remain intact, so long as she shall live, to produce the annuity.
Upon a careful consideration of the whole will, I must conclude
that the testator contemplated a conversion of the realty into per-
sonalty. The purposes of his will cannot well and efficiently be
carried out without such conversion. A division was contem-
plated, to carry into effect his gifts to charitable objects and other
legatees, and that can only be well done through a conversion.
A direct authority to sell is given ; but that of itself would not
be sufficient to work a conversion. It is only when the whole will
is considered, and the disposition made of the estate, and the pay-
ments to be made thereout, and the division made thereof, is
brought into view, that such result is reached. (*Dodge* v. *Pond*,
23 N. Y., 69.) The testator was a lawyer, and as such was con-
versant with the import of legal terms. He drew his own will.
The third part of his estate, designed for these charities, is dis-
posed of by the simple words "*I give.*" When speaking of the
other residuary legatees, he uses the words "*I give and devise.*"
When making provisions for these charitable institutions, the lan-
guage used would seem to indicate that, as to them at least, he
meant gifts of money. These gifts cannot be well and conven-
iently consummated without a sale of the realty. That the
terms of the will accomplish a conversion of the realty into per-
sonalty is conceded by the learned counsel of the plaintiff in his
argument ; and this would seem to obviate any objection arising
under the Revised Statutes that the trust, so far as the real estate
was concerned, was not recognized by its provisions. The only
trust in the executors, in respect to this portion of the estate, is to
sell the same and to divide the proceeds among the beneficiaries to
whom the same is in effect given. To that there can be no valid
objection. The above considerations cover all the grounds sub-
mitted for judicial determination, and judgment is rendered
accordingly.

*Platt, Gerard & Bowers*, for the appellant.

*Dunning Edsell, Hart & Fowler*, for the respondents, Cassidy and Rice.

*Devlin & Miller*, for the Catholic societies, respondents.

POTTER, J.:

This is an appeal from a judgment of this court at Special Term. The action was brought by plaintiff individually and as executrix, to obtain a construction of the will of John H. Power, deceased who was the husband of the plaintiff, and a determination of this court upon that portion of the will contained in its residuary clause. The court at Special Term adjudged the will valid, and that by the will the real estate of the testator was converted into personalty. The plaintiff appeals from the judgment declaring that the devise to the Roman Catholic societies, charities, schools, etc., was valid, and the defendant Rice from so much of the judgment as declares the conversion into personalty. There is also an appeal from the order making such charities, etc., parties defendant in the action.

The principal question in this case is whether the devise of one-third of the residue of the testator's estate, which consisted of both real and personal property, to his executors, to be divided by them among such Roman Catholic charities, institutions, schools or churches in the city of New York, as a majority of the executrix and executors shall decide, and in such proportion as they may think proper, is valid under the statute of uses and trusts or powers in trust.

The estate and subject given, and the persons named as trustees, are well-defined, certain, and therefore free from difficulty. The question arises from the uncertainty of the beneficiaries. The case of *Williams* v. *Williams* (4 Seld., 525), which is cited upon this point, has been modified and limited at least in respect to several dicta contained in it. We think the law is definitely settled by the cases reported since the case of *Williams* v. *Williams*, that a trust for undefined beneficiaries is void, however certain the trustees may be, and though the estate vests in the trustees at

once upon the death of the testator, and notwithstanding the devise or bequest was for charitable, religious or public uses. (*Bascom* v. *Albertson*, 34 N. Y., 584, 592.) There can be no trusts of realty except such as are permitted by the Revised Statutes. (1 R. S., 727, § 45 ; id., 728, § 55 ; *Holmes, Ex'r,* v. *Mead*, 52 N. Y., 332 ; *Dillaye et al.* v. *Greenough*, 45 id., 438 ; *Levy* v. *Levy*, 33 id., 97.)

The general rule in relation to the necessary degree of certainty as to beneficiaries under a valid trust, is stated in Story's Eq. Jur., as follows : "If, therefore, a trust be clearly created in a party, but the terms by which it is created are so vague and indefinite that courts of equity cannot clearly ascertain either its objects or the persons who are to take, then the trust will be held entirely to fail, and the property will fall into the general funds of the author of the trust." (2 Story's Eq. Jur. (10th ed.), § 979, *a;* *Wheeler* v. *Smith*, 9 How. [U. S.], 55, 79.) In *Wright* v. *Atkins* (Turner & Rus., 157), Lord Eldon said, in order to determine whether a trust of this sort is a trust which a court of equity will interfere with, it is a matter of observation and authority that the object must be as certain as the subject.

The trust must be of a such a nature that if the trustee should decease or refuse to act, the court itself can execute the trust. (*Morice* v. *The Bishop of Durham*, 10 Vesey, 521.) Under this rule a provision in a will directing the executors to devote the avails of certain real estate, together with any residue, to such charitable and educational objects and purposes, as to them might seem proper and just, is invalid. (*Adams* v. *Perry*, 43 N. Y., 490; *Morice* v. *The Bishop of Durham*, 10 Vesey, 522.) So a power of appointment to give or devise property, " among such benevolent, religious or charitable institutions as she may think proper," held void, because vague and indefinite. (*Norris* v. *Thompson's Ex'r.* 4 C. E. Green [N. J.] Rep., 307.) But in order to satisfy the rule above stated it is not necessary that the beneficiaries or *cestui que trusts* be named ; any designations or descriptions by which they be identified or determined will answer the rule. It is entirely proper, not to say common, to resort to parol proof or proof *aliunde* the will, to identify or ascertain the beneficiaries, legatees or devisees. (*Lefevre Ex.* v. *Lefevre*, 59 N. Y., 434.) It

is not necessary or material that the beneficiary be definitively ascertained and known at the date of the will, or even at the death of the testator. If the gift is to a well defined class, which is capable of being ascertained to a certainty, when the right to receive it accrues, it is sufficient. (*Holmes* v. *Mead*, 52 N. Y., 332, 343.) A devise to trustees to pay the yearly income of lands to the sister of the testator for her life, and after her decease to divide the same among the partners of the testator who should be in partnership with the sister at her decease, or to whom she had disposed of her business, was held a good devise to the persons to whom she disposed of the business when ascertained. (*Stubbs* v. *Sargon*, 3 Myl. & C., 507.)

*Hoey* v. *Kenny* (25 Barb., 396), was a devise of a life estate to the wife, and to be by her distributed and divided among the testator's relatives in such shares as she saw fit.

It was proved upon the trial that there are and were numerous Roman Catholic charities, churches, etc., existing in the city of New York, duly incorporated and authorized to take devises and bequests, and these were the classes of beneficiaries named in the will, and from which the executors were to select the objects or corporations which should receive the testator's bounty.

In the case of *Williams* v. *Williams* (4 Selden, *supra*), it was held that where the beneficiaries were not more definite and specific than the children of the poor of Huntington it was sufficiently certain. I do not understand that this practical application of the rule in question has been overruled or condemned by subsequent cases in the court of last resort. If so, it has escaped my attention ; it is some of the principles in the abstract enunciated by Judge DENIO, in that case, which had been disapproved by that court in later cases. (*Bascom* v. *Albertson*, 34 N. Y., 584; *Adams et al.* v. *Perry*, 43 id., 487; *Holmes* v. *Mead*, 52 id., 337.) But in these cases, while condemning some of the propositions enunciated in *Williams* v. *Williams* (*supra*), the court declared that trusts, which indicate specific and ascertainable classes as the beneficiaries of the trust, are valid. (See *Bascom* v. *Albertson*, 592.)

If the beneficiaries are defined and capable of being ascertained with certainty, the rule in relation to certainty of beneficiary is satisfied. (*Holmes* v. *Mead*, *supra*, at p. 343.) The incorporated

Roman Catholic churches, etc., may be easily ascertained by a reference to the public records kept in the State or city. When they are found, that is the end of the inquiry as to the existence of the beneficiary.

In the case of *Williams* v. *Williams* (*supra*), and many other cases, the inquiry is much more laborious, and the facts oftentimes much more difficult of ascertainment and determination; for instance, to ascertain in a community the names of the children, their parents, and whether such parents are rich or poor, imposes great labor, requiring a large amount of time with careful and judicious discrimination. In the case under consideration a search for a short time among the office records would discover all the corporations of the class specified in the will, and require nothing further of the executors than to select the particular corporation which should partake of the bounty, and the sum it should take. This principle is confirmed and illustrated by various provisions of the Revised Statutes in relation to powers. Indeed the provisions of the will under consideration, if it were not for the alleged conversion of the real into personal, and the fact that the estate consists of both real and personal property, might well be treated as a special power in trust, because it authorizes a disposition to be made to a class. (Sec. 95, m. p. 734, 1 R. S.) Where the disposition is directed to be made to several persons, without specification of the share to each, all shall be entitled to receive alike. (Section 98.) But where it is left to the trustees to select, he may allot the whole to one or more of the *cestui que trusts.* (Section 99.) And if the trustee shall die before execution of the power, the execution shall be decreed in equity for the equal benefit of all the beneficiaries. (Section 100.) We are brought to the conclusion that the beneficiaries are sufficiently designated to answer the rule in that regard. I do not think the trust invalid because the selection by the trustee of the beneficiaries was not limited in terms to incorporated bodies. Only incorporated bodies can take, and it is not to be presumed that the testator intended, nor that the trustees would attempt, to give to those who could not take, and the court would restrain or restore a gift by the executors to an unincorporated beneficiary. A devise to a trustee to distribute and divide the residue of an

# POWER v. CASSIDY. 305

estate to the relatives of the testator was held good, though some of the relatives were aliens and could not take. (*Hoey* v. *Kenny*, 25 Barb., 396.) The distribution in this case has been made among corporations who are competent to take under the devise, and are the parties to the record and judgment. But it is insisted, and we think correctly, that there is no proof in the case that there are other Catholic institutions in the city of New York and not incorporated.

I think there can be no question that the selection of these objects of the bounty was made in conformity to the will and the law. Some question was made in relation to the nature of the estate, whether the real was converted into personal estate by the will and if so, what the ultimate rights of the widow in the residue, and the mode of providing and assuring the payment of the annuity bequeathed to her would be. The executors are authorized to sell all property of the testator, and with the proceeds of the sale, or the income thereof, to raise an annuity of $8,000 for the wife of the testator and the general legacies ; and in a subsequent portion of the will, in which he appoints the executors and trustees, he authorizes them, or the survivor of them, to sell all of his estate at such time as they should deem it proper, with the exception of the unfinished house upon Fifth avenue, which they are directed to finish and sell at once. He, moreover, directs a division of the residue, after paying the debts, legacies and the annuity into three parts, one of which is, as we have seen, is to be divided among the *cestui que trusts*, limited only by the number of incorporated Catholic institutions and the discretion of the trustees. The *time*, but not the *fact*, of selling the real estate, was left to the trustees. It is manifest the testator intended the real should be converted into personal property. (*Dodge* v. *Pond*, 23 N. Y., 69; *Arnold* v. *Gilbert*, 5 Barb., 190.) I think the holding of the court below, that the widow took one-third of the residue, including the investment to produce the annuity, is in entire accord with the provisions of the will and the intention of the testator. This conclusion effectually disposes of the appeal from the order bringing in certain Roman Catholic institutions as parties defendants.

The decree should be affirmed with costs to be paid to the executor Cassidy and the Roman Catholic institutions named in

the order as defendants, out of the one-third of the residue devised to the plaintiff and to defendant Rice, respectively, in equal proportions.

INGALLS, P. J. (with some hesitation), concurred.

DANIELS, J.:

Whether the devise and bequest of the third of the testator's estate to his executors and executrix, to be divided by them among such Roman Catholic institutions, schools, or churches, in the city of New York as a majority might decide upon, and in such proportions as they should think proper, was sufficiently certain to constitute a valid disposition of this interest in the estate, is certainly a point attended with very great doubt. It was not sufficiently definite to be capable of being executed by the court, if the executors failed to exercise the discretion intended to be vested in them. And if that be the test, as it was intimated to be in *Holmes* v. *Mead* (52 N. Y., 332, 334), and substantially held to be in *Norris* v. *Thompson* (4 C. E. Green [N. J.], 307), then this interest has not been legally disposed of by the will. But the learned judge, before whom the cause was tried at Special Term, has fortified an adverse conclusion to this, by an elaborate and able opinion, and that has been followed in a similar manner by Mr. Justice POTTER, after hearing the argument made in support of the appeal. The point presented is important as well as interesting, and the parties affected by it will not be satisfied without obtaining upon it the judgment of the last tribunal to which it can be taken. Under these circumstances, and for the purpose of facilitating the early as well as final disposition of the case, the conclusion of these opinions will be adopted without any further discussion of the point, and that will lead to the present affirmance of the judgment.

Decree affirmed.