WILLIAM TITUS, executor, &c. *vs.* ABRAHAM WEEKS and others.

A testatrix, by her will, directed all her property to be converted into personal estate, and the whole fund thence arising to be placed and kept at interest during the minority of J. A. W., and all the interest paid to the testatrix's four nephews, W., A., T. and H., equally. When J. A. W. should arrive at full age, the fund was to be divided as follows: The amount of interest paid to the four nephews was to be computed, and then one half of an amount found by adding this interest to the principal of the fund, was to be divided equally among the four nephews. The other half was directed to be disposed of as follows: $1000 to be placed at interest, and the interest paid to S. W. during his life, and at his death the principal sum of $1000 to be paid to the children of S. W., in the proportion of one share to

Titus *v.* Weeks.

a daughter and two shares to a son. Next, out of this half of the estate, at the period of the majority of J. A. W., $200 was bequeathed to J. W., and the residue of such half was to be divided into four parts, of which three parts were given to the children of S. W., and one part to a sister of the testatrix. J. A. W. died before reaching the age of twenty-one.

*Held,* 1. That the direction to ascertain the amount of the legacies to the various beneficiaries, by adding to the principal of the fund the amount of interest which should have been paid to the four nephews, was not a direction for accumulation, but only a method of ascertaining or declaring the amount of their shares.

2. That the period of the minority of J. A. W. was not a minority dependent upon life, but was a definite term, extending until the time when that minority would terminate, or, in the event of his death, (which had happened,) would have terminated.

3. That the absolute ownership of the estate was not suspended, by the direction to pay or apply the interest to the four nephews during the minority of J. A. W.; but that the four nephews took an absolute interest in the legacies given to them respectively; such legacies being certain, or capable of being rendered certain, in amount, payable at a definite period, and dependent upon no condition. That the bequests were vested, although the time of payment was deferred.

4. That the interests of the children of S. W. in the bequest to them, payable at the same time as the legacies to W., A., T. and H., were as much vested as those given to the latter. That the gift would embrace not only the children living at the death of the testatrix, but all such children who might come into existence before the period of distribution; and if any of the children of S. W. living at the death of the testatrix should die, their shares would devolve to their representatives.

5. That the bequest of $1000 to S. W. to be kept at interest during his life, for his benefit, and the interest paid to him, the principal to be divided among his children at his death, could also be sustained; the children of S. W. now living, taking vested interests in that bequest, subject to be divested, *pro tanto*, in favor of all who might be born subsequent to the death of the testatrix, and previous to the death of S. W. And that the intervening life estate in S. W. neither prevented their interests from vesting, nor rendered the fund inalienable.

6. That the possible diminution of the quantity of the estate which would be payable to each of S. W.'s children, either at the arrival of the period when J. A. W.'s minority would terminate, or at the death of their father, would not render the interests of such children inalienable.

7. That all the bequests of the will were valid and could be sustained. LOTT, J. dissented.

The provisions of the statute forbidding the alienation by a *cestui que trust* of his interest in an express trust, are not applicable to trusts or estates in personal property.

APPEAL from a judgment entered at a special term. The action was brought by the plaintiff, as executor of Rachel Weeks, deceased, against the husband and legatees and next of kin of the deceased, for the construction of her will. The complaint alleged that Rachel Weeks, late of the town of Islip, county of Suffolk, departed this life on or about the 13th day of January, 1858, having first made and published her last will and testament in the words and figures following, to wit:

"I, Rachel Weeks, of Islip, in the county of Suffolk, married woman, holding my property to my sole and separate use, do make and appoint this my last will and testament in manner and form following, that is to say:

I direct my executors hereinafter named, as soon after my decease as may be convenient, to convert into money all my household furniture and other property which shall not then consist of money, or notes, bonds or securities for money.

I order the whole of my estate to be put and kept at interest, during the minority of my grand nephew John A. Whitson, and the interest thereon accruing to be paid during such minority to my nephews Warren Mitchell, Albert H. Mitchell, Thomas Andrew Mitchell and Henry Mitchell, equally.

When the said John A. Whitson shall have arrived at full age, I direct that an account shall be taken of the interest paid, and belonging to my said four nephews, and be added to the principal of my estate, thus forming one gross sum of principal and interest.

I direct that such part of the principal of my estate shall then be paid to my said four nephews as shall, with the interest they shall have before received, equal the one half of such gross sum.

I dispose of the remaining half of such gross sum as follows, viz.: I direct that one thousand dollars thereof be kept at interest during the lifetime of my nephew Smith Whitson, and that the interest accruing thereon be paid to the

said Smith Whitson, and at his decease I give the said sum of one thousand dollars to the children of the said Smith Whitson, in the proportion of one share to a daughter and two shares to a son.

I give and bequeath to my stepson Isaac Weeks, son of Abraham Weeks, of Farmingdale, the sum of two hundred dollars.

The residue of said remaining half I direct to be divided into four equal shares or parts, and I give three parts thereof to the children of Smith Whitson in the proportions aforesaid, and the other part I give to my sister Ann Mowbray.

I appoint my friends William Titus, of Westbury, and Richard Powell, of Bethpage, executors of this my last will and testament."

Which said last will and testament was duly proved and recorded as a will of real and personal estate, by and before John Lawrence Smith, Esq., surrogate of said county of Suffolk, on the 10th day of March, 1858, and letters testamentary under the seal of said surrogate, duly granted and issued to the plaintiff; that the plaintiff proceeded, on being qualified, to convert the estate and property of said testatrix into money in pursuance of the directions given in the will, and has so converted the same; that the amount of the whole estate so left by the testatrix, after paying debts, funeral expenses and costs and charges of administration, is five thousand six hundred and seventy-five dollars ($5675;) that the plaintiff has put and kept the said amount at interest, and has received as interest and income therefrom, as follows: The sum of $347.16, net income, up to May 1st, 1859. That he has paid out in obedience to the directions in said will contained, as follows: To Albert Mitchell, his proportion of said interest as bequeathed in the will, $81.50; to Henry W. Mitchell, his proportion of said interest as bequeathed, $81.50; to the receiver of Warren W. Mitchell, $81.50; that he has set apart and invested for Thomas A. Mitchell, a minor, his proportion of said interest, $81.50;

and that he has retained commissions as executor, $17.16;
and that there is now in his hands as executor as aforesaid,
in addition to said principal sum, the sum of $348.62, being
net interest and income accruing since the 1st day of May,
1859. That John A. Whitson, the grand nephew of testa-
trix, during whose minority the estate was directed to be
kept at interest, departed this life on or about the 20th day
of November, 1859, at the age of sixteen years, one month
and twenty-nine days, without having arrived at the age of
twenty-one years; that there are now surviving the said
testatrix, Abraham Weeks her husband, and the following
persons, her next of kin and heirs at law, to wit: Jane
Oakley, wife of Solomon Oakley, a sister of testatrix; Ann
Mowbray, wife of Eliphalet Mowbray, a sister of testatrix;
Henry Whitson, a brother of testatrix; Mannah Mitchell,
wife of Andros Mitchell, a sister of testatrix; Phebe Ann
Hendrickson, wife of Albert W. Hendrickson, a sister of
testatrix; and Mary Jane Willets, wife of William P. Wil-
lets, Phebe Ann Baylis, wife of Richard M. Baylis, Albert
H. Mitchell, Henry W. Mitchell, Warren W. Mitchell and
Thomas A. Mitchell, all children of Rebecca Mitchell, de-
ceased, who was also a sister of testatrix; that Smith Whit-
son and Isaac Weeks, two other of the defendants, are named
as legatees in said will; and that Albert Whitson, Abba
Rebecca Whitson, Phebe Ann Whitson and Edgar Whitson
are also named as defendants, being children of Smith Whit-
son, and mentioned as residuary legatees in said will, after
the death of their father Smith Whitson, and as also re-
siduary legatees under the seventh clause of said will.

The plaintiff alleged that he was advised that there was
doubt and uncertainty as to the true construction of the said
will, and the persons who are entitled to receive the estate,
since the death of the said John A. Whitson, he having died
during his minority and before arriving at full age. That
Abraham Weeks, the husband of said testatrix, claims and

Titus *v.* Weeks.

insists that, under the second and third clauses of said will, the bequest of the whole estate is void, *as being contrary to statute*, and that he as husband, and entitled to administration, is entitled to the whole estate, it consisting entirely of personal property.   That Smith Whitson claims and insists, under the fifth clause of said will, that he is entitled to the income arising from one thousand dollars of said estate, from and after the date of the death of said John A. Whitson, and that the principal of said one thousand dollars will belong to his children after his decease.   And that Warren W. Mitchell, who is named in the will, Warren Mitchell, Albert H. Mitchell, Thomas A. Mitchell and Henry Mitchell, the four nephews of the testatrix, mentioned in the second clause of said will, claim and insist that either they are entitled to receive the interest of the whole estate until such time as the said John A. Whitson would have arrived at full age, had he continued alive, or that, having deceased, they are now entitled to one half the estate under the fourth clause of said will. And the said Isaac Weeks claims and insists that he is entitled to a legacy of two hundred dollars, under the sixth clause of said will; and that Albert Whitson, Abba Rebecca Whitson, Phebe Ann Whitson and Edgar Whitson, children of said Smith Whitson, claim and insist that they are entitled collectively to a residuary portion of said estate, under the seventh clause of said will; and that Ann Mowbray, wife of Eliphalet Mowbray, claims and insists that she is entitled to receive a portion of said estate, under the seventh clause of said will.

The plaintiff further alleged, that he was desirous of paying the money in his hands, whether as principal or interest, to the persons legally entitled to the same, and therefore prayed for an adjudication and judgment of this court that should settle the construction of the said will, as it respects all the parties defendants in this action, and determine to whom the moneys arising from said estate shall be paid, or for such other or further judgment as to the court might seem

just and agreeable to equity; and that the plaintiff's costs might be paid out of the estate.

The defendants Smith Whitson and Ann Mowbray, by their answer, averred and insisted that the testatrix and the defendant Abraham Weeks intermarried subsequently to the tenth day of April, 1856. That previous to their marriage, and on the said tenth day of April, 1856, articles of agreement were made between them, whereby it was agreed that in consideration and in contemplation of said marriage, the said testatrix should, at all times thereafter, have, hold, possess and enjoy, to her sole and separate use, and free and clear from all claims or liabilities of the said Abraham Weeks, all property of every kind which she then owned or was entitled to, or which might thereafter descend or be devised or bequeathed to her, and the profits and income thereof, and that she might by will, or by any writing in the nature of a will, dispose of the same in the same manner and to the same effect as if she were unmarried, and that, for want of such disposition, the same should descend and belong, at her decease, to her heirs at law. That, by a proper construction of the will of said testatrix, the one half of her estate subject to distribution did, at her decease, belong to her nephews, Warren Mitchell, Albert H. Mitchell, Thomas Andrew Mitchell and Henry Mitchell. That, out of the other half, two hundred dollars was to be paid to Isaac Weeks, one thousand dollars invested for the use of the defendant Smith Whitson, during his life, and at his decease to be paid to his children in the proportion of one share to a daughter and two shares to a son. And that the residue of said half, beyond three parts thereof, to the children of the defendant Smith Whitson, in the proportions aforesaid, and the other part to the defendant Ann Mowbray.

The defendants Warren W. Mitchell, Albert H. Mitchell and Henry W. Mitchell, by their answer, insisted that the will was not void, but that the same was good and valid, and that they, together with their brother, the defendant Thomas

A. Mitchell, are entitled to receive the interest of the whole estate, until such time as John A. Whitson, named in said will, would have arrived at lawful age, had he so long lived, and then to the same share of the principal of the estate as if said John A. Whitson had lived until he was of lawful age; or, if the court should not adopt this construction, then these defendants insisted that they, with said Thomas A. Mitchell, were entitled to the same share in said estate, under said will, as if the said John A. Whitson had arrived at lawful age the day previous to his death.

The defendants Thomas A. Mitchell, Albert Whitson, Abba Rebecca Whitson, Phebe Ann Whitson and Edgar Whitson, being infants under the age of twenty-one years, put in general answers by their guardians *ad litem,* submitting their interests to the protection of the court.

The action was brought to a hearing on the pleadings, before Mr. Justice LOTT, at a special term, and he decided that the bequests in the will were void, on the ground that the absolute ownership and power of alienation of the property is thereby suspended for a longer period than is allowed by law. But he was unable to decide what distribution should be made of the property. It was alleged in the answer of Smith Whitson and Ann Mowbray that an ante-nuptial agreement was entered into between the testatrix and her husband Abraham Weeks, before their intermarriage, by which a disposition of the property was made, and there are certain allegations in the complaint as to the next of kin and heirs at law of the deceased, and other matters, which by reason of the infancy of some of the defendants must be proved before the court or a referee, before final judgment is rendered. All questions, except as to the effect of the will, including that in relation to costs, were reserved until the allegations referred to were inquired into and determined. It was accordingly referred to Isaac H. Kirby, Esq., as referee, to take proofs of the material allegations in the complaint, and as to the ante-nuptial contract referred to in the answer of the de-

fendant Smith Whitson, and upon the hearing before said referee, all the said allegations and the said ante-nuptial contract, as set out in said answer, were duly proved. Subsequently the referee made a report, in which it was stated that it was proved before him that Rachel Weeks, before her marriage with the defendant Abraham Weeks, entered into an ante-nuptial agreement with him, by which agreement duly executed the said Rachel Weeks was authorized to dispose of her property by will, notwithstanding her coverture, the same as if she were a single woman. That the said Rachel Weeks, during her lifetime, duly made and executed her last will and testament, in manner and form as set forth in the complaint herein, which was duly proved, and the plaintiff duly qualified as executor thereof. That John A. Whitson, mentioned in the will, is deceased since the death of the testatrix, and died before arriving at full age, and that the plaintiff, as such executor, has in his possession the principal sum of $5700 belonging to the estate of said Rachel Weeks. And on reading and filing due proof of service of notice of application for judgment, on all the parties who had appeared in this action, it was ordered, adjudged and decreed, that the report of the referee be in all respects confirmed. That the bequests contained in the said will of Rachel Weeks, deceased, are void, and that the plaintiff, as the executor of the said Rachel Weeks, deceased, do distribute the property in his hands, or which may hereafter come into his hands, as such executor, and pay the same as follows, viz: after deducting therefrom the costs and counsel fees allowed therein, and the expenses, commissions and disbursements of the plaintiff as executor, to which he may be by law entitled, then one sixth part of the sum remaining in his hands for distribution to each of the four following persons, who are the sisters of the testatrix, to wit: to Jane Oakley, wife of Solomon Oakley, Ann Mowbray, wife of Eliphalet Mowbray, Hannah Mitchell, wife of Andrus Mitchell, and Phebe Ann Hendrickson, wife of Albert W. Hendrickson, each one-sixth part, That

there also be paid by the plaintiff to Henry Whitson, a brother of said testatrix, one-sixth part. That of the remaining one sixth part, one-sixth thereof, or òne thirty-sixth part of the entire sum to be distributed, be paid to each of the following persons, who are the children of Rebecca Mitchell, a deceased sister of the testatrix, to wit: to Mary Jane Willets, wife of William P. Willets, Phebe Ann Baylis, wife of Richard M. Baylis, Albert H. Mitchell, Henry W. Mitchell, Thomas A. Mitchell and Warren W. Mitchell, each one thirty-sixth part. Provision was also made in the decree for the payment of the costs of the several parties, out of the fund. From this decree the defendants appealed.

*A. Underhill, W. P. Buffett* and *J. Lawrence Smith,* for the appellants.

*Lamberson & Onderdonk,* for the respondent.

EMOTT, J. The will of Rachel Weeks directed all her property to be converted into personal estate immediately upon her death. It does not appear whether she left any real estate, but that is immaterial, since under the directions of the will the trusts and limitations are to be treated as limitations of personal estate.

The provisions of the will are substantially these: The whole fund is to be placed and kept at interest during the minority of John A. Whitson, and all the interest paid to the testatrix's four nephews, Warren, Albert, Thomas and Henry Mitchell, equally. When John A. Whitson shall arrive at full age, the fund is to be divided as follows : The amount of interest paid to the four nephews is to be computed, and then one half of an amount formed by adding this interest to the principal of the fund, is to be divided equally among the four nephews. The other half is directed to be disposed of as follows : One thousand dollars to be placed at interest, and the interest paid to Smith Whitson during his life, and

at his death the principal sum of one thousand dollars to be paid to the children of Smith Whitson, in the proportion of one share to a daughter and two shares to a son. Next, out of this half of the estate, at the period of the majority of John A. Whitson, two hundred dollars is bequeathed to Isaac Weeks, and the residue of such half is to be divided into four parts, of which three parts are given to the children of Smith Whitson, and one part to Ann Mowbray, a sister of the testatrix.

The direction in this will to ascertain the amount of the legacies to the various beneficiaries, by adding to the principal of the fund the amount of interest which should have been paid to the four nephews, is not a direction for accumulation. No amount is to be actually received and retained and added to the fund, but the amounts which have been paid over to the four legatees are merely to be computed as a part of the fund, before dividing it between them and their co-legatees. This is a method of computation — of ascertaining or declaring the amount of their shares — and not an accumulation. It in effect charges them with one half of what they receive during the minority of John A. Whitson, as a part of their shares of the estate.

The first question of importance is, what is the period fixed for the distribution; whether the executors are to hold the estate as trustees until the period at which John A. Whitson would have become twenty-one years of age, or only during his life, if he should die before that period. John A. Whitson did not live to become twenty-one, and if the time for distribution is accelerated by his death, it will have a most material effect upon the execution, as well as the construction, of this will.

I am of opinion, however, that this period of the minority of John A. Whitson is not a minority dependent upon life, but is a definite term extending until the time when that minority would terminate, or in the event of his death, which has happened, would have terminated. It must be observed

Titus *v.* Weeks.

that John A. Whitson takes no interest whatever either in the income or in the principal of the fund. He is not a legatee or a beneficiary in any way. The time of distribution is not postponed, nor the ownership of the fund suspended, if it be suspended, for his benefit. If there were a trust created to pay over to him or apply for his benefit the income during his minority, it would be reasonable to suppose that with the termination of his life the trust should determine, equally as upon the termination of his minority. But the name and the minority of John A. Whitson are used in this will simply to indicate the period of distribution, and as a measure of time. It is plain that the testatrix had in mind a definite period during which she desired that the four nephews, whom she named, should receive the benefit of the whole income of her estate, and that she also intended that the final distribution of her estate should not take place until the end of that period. It would be doing violence to her intention, and to the whole structure of her will, to hold that all its provisions should be changed, and the distribution of her estate so materially accelerated, by an event which she does not seem to have contemplated, and which does not necessarily produce any change or effect upon the directions of the will, or the enjoyment of the property.

It follows from these premises, that if the absolute ownership of the whole or of any part of the estate is suspended by the direction to pay or apply the interest to the four nephews during the minority of John A. Whitson, the whole disposition of the estate made by the will is void. For the minority of John A. Whitson being a fixed term, and not dependent upon his life, it would be illegal to suspend the ownership of the property for such a period, without reference to the future limitations. The rule of the statute is that life must be the measure of the period during which a suspension of the absolute ownership of personal property is permitted, and that it cannot be measured by any number or term of years, however short.

I do not however so regard the provisions of this will. The four nephews, Warren, Albert, Thomas and Henry Mitchell, take an absolute interest in the legacies given to them respectively. Their legacies are dependent upon no condition. They are certain, or capable of being rendered certain in amount, and they are payable at a definite period, while in the meantime the legatees are to receive the interest or income. These four nephews are as much the absolute owners of the amounts to be paid to them at the period fixed by the will, as they are of the income in the meantime, and are entirely competent to alienate their legacies or shares of the estate at any time. The bequests to them are vested, although the time of payment is deferred.

Similar observations apply to the legacies to Isaac Weeks and to Ann Mowbray. These gifts must be sustained by the same rules which have now been applied.

There remain the bequests to Smith Whitson for life and at his death to his children, and the independent bequest to the children of Smith Whitson. As to the latter, the rule undoubtedly is that the gift will embrace not only the children living at the death of the testatrix, but all such children who may come into existence before the period of distribution. Yet the interests of the persons now belonging to the class are vested, although they are subject to be divested in part in favor of or in order to let in those who may be born subsequently but before that period. (*Jarman on Wills*, 75, 76. *Tucker* v. *Bishop*, 16 *N. Y. Rep.* 402.) If any of the children of Smith Whitson living at the testatrix's death should die, their shares would devolve to their representatives. The interests of these children in the bequest to them, payable at the same time as the legacies to the nephews of the testatrix, are as much vested as those given to the latter.

The amount of these legacies, as well as of that to Ann Mowbray, will depend upon the amount of the residue of the one-half of the estate not given to the four nephews, after deducting the amounts directed by the clauses of the will to be paid

from it. As to the two hundred dollars given to Isaac Weeks I find no difficulty, as has been already said. The bequest of one thousand dollars to be kept at interest during the life of Smith Whitson for his benefit, and the interest paid to him, and the principal to be divided among his children at his death, presents different and more difficult questions. Still, I have reached the conclusion that this portion of the will also can be sustained. The interests of the children ultimately entitled to this fund of a thousand dollars, are to be regarded as vested, upon similar principles to those which govern in the instance of the bequest payable at the period when John A. Whitson's minority would end. The period of distribution is postponed still further, to the death of Smith Whitson, and any children who might come into being too late to share in the former legacy will, nevertheless, share in this. Still, the children of Smith Whitson now living take vested interests in this bequest, subject, as before, to be divested, *pro tanto*, in favor of all who might be born subsequent to the death of the testatrix, and in this case previous to the death of Smith Whitson. The intervening life estate in Smith Whitson neither prevents their interests from vesting, nor renders the fund inalienable. For the better opinion is that expressed by Judge Cowen, in the court of errors, in *Kane* v. *Gott,* (24 *Wend.* 662,) and followed by this court in several more recent cases, that the provisions of the statute forbidding the alienation by a *cestui que trust* of his interest in an express trust, are not applicable to trusts or estates in personal property. Nor does the possible diminution of the quantity of the estate which will be payable to each of Smith Whitson's children, either at the arrival of the period when John A. Whitson's minority would terminate, or at the death of their father, render the interest of these children inalienable. Whatever interest each has in either of these bequests is alienable at any time, and if it be diminished by the birth of other children entitled to share in the distribution, the interests of these children, also, will be

alienable as well as vested and transmissible as soon as they come into being. The case of *Tucker* v. *Bishop* (16 N. Y. Rep. 402) was in this particular like the present, and the reasoning of Judge Paige is conclusive upon this question.

I am therefore of a different opinion from my learned associate who heard this cause at the special term, as to the validity of the bequests contained in the will of Rachel Weeks. I think all these bequests should be sustained, and that the judgment appealed from should be reversed, and a judgment entered declaring the rights of the parties according to the views I have now expressed. The costs of all parties will be paid out of the fund.

BROWN, J. concurred.

LOTT, J. (dissenting.) I am unable to concur in the conclusion at which my brethren have arrived. I agree with them that the period fixed by the testatrix for the distribution of her estate is the time when John A. Whitson, if he had lived, would have attained the full age of twenty-one years, and that the executors are to hold the estate as trustees until that time. This, in my opinion, suspends the absolute ownership of the property until that period; and the question of difference between us is whether there is any suspension at all, for it is conceded that if there is, then it is a suspension for a fixed time, a prescribed number of years, and not limited by any life or lives in being, and is consequently unauthorized by our law.

It was evidently the intention of the testatrix to increase the fund to be distributed, by the addition to the estate of which she should die possessed, of the interest that should accrue thereon subsequent to her death up to the time of the division and distribution thereof directed to be made. This increased fund is made the basis of such division and distribution, and although it is true that the interest thus accrued is to be paid from time to time to four of her nephews named

Titus *v.* Weeks.

by her, and thus in one aspect of the case there is no accumulation, yet there is such in fact for all substantial purposes. The interest, and the whole of it, is made a part of that fund, and although paid over in the meantime, it is so paid more in the nature of an advance than as an absolute payment, inasmuch as it is declared to form a part of the one half of the "gross sum" to which these nephews are entitled in the distribution of the increased fund. In any view of the case, a portion of the fund to be distributed is accrued interest. To produce that interest the principal is necessarily retained in the hands and under the control of the executors, as trustees. That control is to be exercised by them for a specific period or term, and the entire estate is vested in them for that purpose; and conceding that the ultimate distributees may have vested estates or interests in the fund to be divided, yet they cannot confer an absolute and immediate ownership of the property upon any one. The estate of the trustees prevents such an alienation, and there are no persons in being by whom an absolute ownership can be conveyed, nor can there be until the time designated by the testatrix for its distribution.

If I am right in these views, the absolute ownership and power of alienation of the property is suspended for a longer period than is allowed by law, and the judgment of the special term should be affirmed.

Judgment reversed.

[Dutchess General Term, May 12, 1862. *Emott, Brown* and *Lott,* Justices.]