NICHOLAS W. WALSH, as Executor and Trustee of HUGH WALDRON, Deceased, Respondent, *v.* MARIE WALDRON and Another, Appellants, Impleaded with Others, Defendants and Respondents.

*Will — suspension of the power of alienation — a single trust with several beneficiaries.*

A testator, by his will, devised all his estate to his executors in trust, giving them a power of sale and directing them to invest all the property in securities, and to pay the income in such sums as they deemed proper to his six children until they, respectively, reached majority, for their maintenance and education. He further directed that the interest of each of the four sons should cease at

majority, both in the income and in the principal. The will further provided that when the youngest son, named Daniel, reached majority the income should be equally divided between the two daughters during their lives; that if either died leaving issue one-half of the whole estate should be disposed of as the daughter dying should direct by will; that if one or both of the daughters died without issue, then one-half or the whole estate, as the case might be, should be equally divided between the sons.

At the time of the testator's death all the children were living, and only one, a son, had reached majority.

In an action brought to obtain a construction of the will:

*Held*, that there was no separate trust for each child, nor any definite share of the income allotted to it, but that all the property was to be held in one trust, each child to receive so much income as the trustee thought proper.

That whether the estate was to be regarded as real or personal property, and, assuming that the word "minority" was equivalent to "life," the trust was void because a final distribution was made dependent upon more than two lives in being at the death of the testator.

APPEAL by the defendants, Marie Waldron and Ellen Waldron, by Charles Jones, their guardian *ad litem*, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 21st day of August, 1891, declaring void the trusts in the will of one Hugh Waldron, deceased, except from that part of the judgment which adjudged that the costs and allowances of the parties, and of the guardian *ad litem*, be paid out of the estate of Hugh Waldron, deceased.

The will in question was, in part, as follows:

"II. I give and devise all my real and personal estate, including all sums realized from life insurance policies now upon my life, of what nature or kind soever, to Nicholas W. Walsh and Flavius J. Allen, my executors, hereinafter appointed, in trust, for the execution of my will, with power to sell and dispose of my real and personal estate at such times and upon such terms, and in such manner as to them shall seem meet.

"III. I direct that my said executors, hereinafter appointed, shall invest any sum and all sums arising from my personal and real property, including any and all sums accruing from life insurance policies now upon my life, of what nature or kind soever, in good and substantial interest-bearing securities, bonds or mortgages.

"IV. I direct that the interest and income arising and accruing from the investments aforesaid directed, be paid by my executors, hereinafter appointed, in such sums as may meet with the judgment

and discretion of my said executors, to my daughters Marie and Ellen, and to my sons James, William, Hugh and Daniel, until they respectively reach the age of twenty-one years, for their maintenance and education.

" V. I further direct that as each of my sons mentioned hereinbefore, attains the age of twenty-one years, that his interest in my estate, or in the income arising therefrom, shall cease. I so direct because I believe that boys of the age of twenty-one should and ought to be able to care for themselves.

" VI. I further direct that when my youngest son, whose name is Daniel, shall have attained the age of twenty-one years, that the income arising from all of my estate shall then be equally divided between my daughters Marie and Ellen, during their lives, and in the event of either of my said daughters dying leaving issue, then, and in that event, one-half of my said estate in the hands of my said executors to be disposed of as she might direct by will; and in the event of one or both of my said daughters dying without issue, then the one-half or the whole of my estate, as the case might be, is to be divided between my sons, or their heirs, share and share alike."

At the death of Hugh Waldron all his children were living, and but one, James Waldron, was of age. He appointed two executors, named Nicholas W. Walsh and Flavius J. Allen, of whom Allen renounced.

*Michael J. Scanlon,* guardian *ad litem* for Marie Waldron and Ellen Waldron, infant defendants, appellants.

*John Delahunty,* for the plaintiff, respondent.

*David M. Newberger,* for the defendants, respondents.

*Ezekiel Fixman,* for the guardian *ad litem* for infant defendants, respondents.

LAWRENCE, J. :

The learned justice who decided this case below rendered the following opinion :

" O'BRIEN, J. In construing the will of Hugh Waldron, deceased, no doubt as to his intentions exist. The language used is unambiguous, and the scheme proposed clearly indicated.

" He intended that each child, during minority, should receive such a portion of the entire income as, in the discretion and judgment of the executors and trustees, would be requisite for his or her support and education, and that as each son attained his majority his interest in the income should cease, and even in the principal he should not thereafter participate, except in the event of either of his daughters dying without issue, or, perhaps, in the event of the daughters dying, though leaving issue, without having made a will.

" His two daughters were the primary objects of his solicitude, as evidenced by the provisions which gave to each of them, upon the youngest son, Daniel, attaining his majority, one-half of the entire income for life, with the right to each upon her death, having issue, to dispose of one-half of the principal.

" To effectuate these intentions a conversion of the real estate would be necessary, and in determining the validity of the trusts created by the will, we must assume the real estate to be equitably converted into personal property. Should the trusts, however, be declared void, and the testator be held to have died intestate, then the necessity for resorting to the doctrine of equitable conversion likewise fails by becoming immaterial.

" Are the trusts of personalty created by the will valid? Under the Revised Statutes, the absolute ownership of personal property shall not be suspended by any limitation or condition whatever by will for a longer period than two lives in being at the death of the testator.

" By the fourth clause of the will the ownership is suspended during the minority of at least four of testator's children; and even if we construe minority to mean lives, we have still the ownership suspended for a period longer than the statute allows. There is no separate trust in favor of each child, nor any aliquot or proportionate share of income allotted, but the principal and income are to be held in a single trust, and each child receives such proportion of the income as the trustee thinks proper to give.

" The fourth clause being void, can the sixth clause be upheld? This provides " that when my youngest son, whose name is Daniel, shall have attained the age of twenty-one years, that the income arising from all of my estate shall then be equally divided between my daughters, Marie and Ellen, during their lives, and in the event

of either of my said daughters dying leaving issue, then, and in that event, one-half of my said estate in the hands of my said executors to be disposed of as she might direct by will," etc.

"In determining the validity of limitations of estates under the Revised Statutes, as said by Judge GROVER in *Schettler* v. *Smith* (41 N. Y., 328): "It is not sufficient that the estates attempted to be created may, by the happening of subsequent events, be terminated within the prescribed period, if such events might so happen that such estates might extend beyond such period. In other words, to render such future estates valid they must be so limited that in every possible contingency they will absolutely terminate at such period or such estates will be void." (*Haynes* v. *Sherman*, 117 N. Y., 433.)

"It has repeatedly been held that the period of suspension must depend upon lives. Every suspension for a definite or indefinite period, however short, is void. If the court were at liberty to make a will other than the testator himself made, it might indulge in a construction which would give a meaning to the sixth clause, holding that the trust is one for the life of Daniel as to the whole fund, and then a trust as to one-half of the fund for each girl for life, and then the entire fund to vest.

"It is evident, however, that the period of the minority of Daniel, as said in *Titus* v. *Weeks* (37 Barb., 136), "is not a minority dependent upon life, but is a definite term extending until the time when the minority would terminate, or, in the event of his death, which has happened, would have terminated. * * * The name and the minority of * * * are used in this will simply to indicate the period of distribution and as a measure of time. It is plain that the testatrix had in mind a definite period during which she desired that the four nephews, whom she named, should receive the benefit of the whole income of her estate, and that she also intended that the final distribution of her estate should not take place until the end of that period. It would be doing violence to her intention, and to the whole structure of the will, to hold that all its provisions should be changed, and the distribution of her estate so materially accelerated by an event she does not seem to have contemplated."

"This language is equally applicable to the will under consideration. The suspension, therefore, attempted by the sixth clause having

been not for a life or lives, but for a definite period, the whole dis-
position of the estate made by the will is void. There should be a
decree accordingly."

We fully concur in the views expressed in the foregoing opinion,
and, therefore, affirm the judgment rendered at the Special Term.

Van Brunt, P. J.:

I concur in the result. It is apparent from a reading of the will
in question whether the subject-matter of the trust is to be con-
sidered as real or personal estate, the trust is to continue as to the
whole of the estate as long as any of the children remain minors.
Because if the youngest son dies before attaining the age of twenty-
one years, and during the minority of the other children, or any of
them, the trust for the others continues until all the minorities of
the sons cease, and after that the final distribution of the estate is
dependent upon the life of a sister.

Thus, if Daniel should die during his minority and before James,
William and Hugh had become of age, the trust must continue
during the minority of each of these or until all had died during
minority, or had attained their majority ; and also until the death
of one of the daughters, before distribution could be had of any
part of the estate.

It might happen, therefore, that five lives must terminate before
distribution, a clear violation of the statute.

Judgment affirmed.